GEORGE A. KELLOGG, Respondent, *v.* THE CHURCH CHARITY FOUNDATION OF LONG ISLAND, Appellant.

*Negligence* — charitable corporations not exempt from liability for tort — when not liable for injuries due to negligence of ambulance driver furnished by livery stable — ambulance not a dangerous instrumentality as a matter of law.

1. A charitable corporation is not exempt from liability for a tort against a stranger because of the fact that it holds its property in trust to be applied to purposes of charity.

2. Where an ambulance owned by the defendant and bearing the name of its hospital was kept at a livery stable, the proprietor of which furnished a horse to draw the ambulance and a man to drive

it on such occasions as the defendant might indicate, the driver having been hired and paid by the livery stable keeper, who alone had the power to discharge him, the relation of master and servant is not established between the defendant and such ambulance driver as might be furnished from the livery stable. Such a contract does not make the driver the servant of the hirer or render his negligence imputable to the latter.

3. The fact that a city ordinance gives the right of way to ambulances in the public streets in no manner authorizes the driving of such vehicles at a dangerous rate of speed. There is no foundation, therefore, for the doctrine that an ambulance is necessarily a dangerous instrumentality. (*Baldwin* v. *Abraham*, 57 App. Div. 67; affd., 171 N. Y. 677; and *Howard* v. *Ludwig*, 171 N. Y. 507, distinguished.)

*Kellogg* v. *Church Charity Foundation*, 135 App. Div. 839, reversed.

(Argued May 17, 1911; decided October 17, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 7, 1910, affirming, by a divided court, a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward M. Shepard, Omri F. Hibbard, Hiram Thomas* and *Edward T. Horwill* for appellant. The testimony was undisputed that the driver was not in defendant's employ. (*Lomer* v. *Meeker*, 25 N. Y. 361; *Hull* v. *Littauer*, 162 N. Y. 569; *Heinemann* v. *Heard*, 62 N. Y. 448; *King* v. *N. Y. C. & H. R. R. Co.*, 66 N. Y. 181; *Hexamer* v. *Webb*, 101 N. Y. 377; *Kueckel* v. *Ryder*, 54 App. Div. 252; 170 N. Y. 562; *Dutton* v. *Amesbury Nat. Bank*, 181 Mass. 154; *McInerney* v. *Delaware & Hudson Canal Co.*, 151 N. Y. 411; *Reedie* v. *L. & N. W. Ry. Co.*, 4 Exch. 244; *Quarman* v. *Burnett*, 6 M. & W. 499.) The fact that defendant owned and was using an ambulance which, under the ordinance, had the right of way, did not make the driver the defendant's servant, or make the defendant responsible for his acts. (*Engel* v. *Eureka Club*, 137 N. Y. 100;

*McCafferty* v. *S. D., etc., R. R. Co.,* 61 N. Y. 178; *Farley* v. *Mayor, etc.,* 152 N. Y. 222.)

John J. Kuhn and Owen N. Brown for respondent. There is evidence from which the jury could find that the driver of the ambulance which collided with plaintiff was the servant or agent of defendant, and the trial court properly denied defendant's motion for a dismissal of the complaint. (*Wyllie* v. *Palmer,* 137 N. Y. 248; *Baldwin* v. *Abraham,* 57 App. Div. 67; 171 N. Y. 677; *Jones* v. *Scullard,* L. R. [2 Q. B. 1898] 565; *Seaman* v. *Kohler,* 122 N. Y. 646; *Howard* v. *Ludwig,* 171 N. Y. 507; *Diel* v. *Zeltner Brewing Co.,* 30 App. Div. 291; *Mullins* v. *Siegel-Cooper Co.,* 95 App. Div. 234; *Schubert* v. *Cowles,* 31 App. Div. 218; *Gulliver* v. *Blauvelt,* 14 App. Div. 523.) Even if it should be held that the evidence in this case shows that the driver of the ambulance was at the time of the accident under the direction and control of his general employer, Williamson, defendant's liability is still a question for the jury because this case presents an exception to the general rule exempting a contractee from liability for the negligence of the servants and agents of an independent contractor. (*Railroad Co.* v. *Morey,* 47 Ohio St. 107; *Davie* v. *Levy,* 39 La. Ann. 551; *Wertheimer* v. *Saunders,* 95 Wis. 576; *Covington Bridge Co.* v. *Steinbrock,* 61 Ohio St. 215; *St. L. & San F. R. R. Co.* v. *Madden,* 93 Pac. Rep. 586; *Dalton* v. *Angus,* L. R. [6 A. C.] 740; *Hardeker* v. *Idle District Council,* L. R. [1 Q. B. Div.] 335; *Boucher* v. *N. Y., N. H. & H. R. R. Co.,* 196 Mass. 355; *P. B. & W. R. R. Co.* v. *Mitchell,* 107 Md. 600; *Loth* v. *C. T. Co.,* 197 Mo. 328.)

WILLARD BARTLETT, J. The defendant is a charitable corporation, maintaining St. John's Hospital in the borough of Brooklyn. On May 21, 1904, a collision occurred at the corner of Lewis avenue and Decatur street in that borough between the hospital ambulance and a bicycle upon which the plaintiff was riding. The plaintiff was

13

so severely injured thereby that he suffered the loss of an eye; and he brought this suit to charge the hospital corporation with liability for the negligence of the driver of the ambulance in causing the accident. The defendant contended originally that even if the driver were in its employ his negligence could not be imputed to a purely charitable corporation, and it prevailed on this ground on the first trial. This view, however, was rejected by the Appellate Division (*Kellogg* v. *Church Charity Foundation,* 128 App. Div. 214); and it must now be regarded as settled that a charitable corporation is not exempt from liability for a tort against a stranger because of the fact that it holds its property in trust to be applied to purposes of charity. (*Hordern* v. *Salvation Army,* 199 N. Y. 233.) As the case now comes before us on appeal from the affirmance of a judgment in favor of the plaintiff on the second trial, the first question which it is necessary to consider is whether there was any evidence to go to the jury tending to show that the relation of master and servant existed between the defendant and the driver of the ambulance at the time of the accident. If that question is resolved in the negative, there will be no need of discussing any other. If it is answered in the affirmative, we shall still have to inquire whether the jury could be permitted to find negligence on the part of the driver of the ambulance and the absence of contributory negligence on the part of the plaintiff.

The negligent conduct attributed to the driver (who could not be called as a witness, as he died before the case was tried) was his failure to comply with a municipal ordinance requiring a vehicle, which is about to turn to the left into another street, to pass to the right of and beyond the center of the street intersecting before turning. The plaintiff contended that the collision occurred solely by reason of the driver's omission to conform to this requirement. The evidence in his behalf showed that the words " St. John's Hospital " appeared on

the cap of the driver and also on the body of the ambulance; and the answer admitted that the defendant "owned, controlled and managed a certain hospital known as St. John's Hospital * * * and that in connection with said hospital the defendant owned and used an ambulance." After the accident the plaintiff was placed in the ambulance which, by direction of the ambulance surgeon who was in the vehicle, was thereupon driven to St. John's Hospital.

These facts were sufficient to warrant the inference, *prima facie,* that the ambulance and the horse by which it was drawn were the property of the managers of St. John's Hospital and that the driver was in their employ. But, as Mr. Justice RICH points out in the able dissenting opinion below, when the case was closed a very different state of facts was presented. " The *prima facie* case had been met and overcome by undisputed evidence, which the court was not at liberty to disregard, conclusively establishing that the defendant did not own the horse drawing its ambulance, did not employ or pay the driver, and did not possess the power or right to discharge him." (135 App. Div. 839, 847.)

The relations between the defendant and the driver of the ambulance were disclosed by the testimony of Steve Williamson, the livery stable man at whose establishment the ambulance was kept. He said he furnished a horse and driver for the hospital on the day of the accident. "The name of the driver was Flood. He is dead now. I also furnished the horse; sometimes used their harness. I could not say on this occasion; sometimes they used my harness, sometimes the ambulance harness. * * * On that day when the call came in for the ambulance, I selected this Flood to go; he was out there often before. I employed him as a driver. I paid him by the week. He was not sent out on any livery call which might be made; he worked around the stable and driving the ambulance, that is all. * * * The

defendant did not ask me to send Flood on that day. They never asked for any driver, only telephoned down for a horse and man.   *   *   *   On the 21st of May, 1904, we had three or four drivers in our employ whom we sometimes sent on these ambulance calls and we would select whichever one would be in to go.   *   *   *   There was no different, no other arrangement with the Church Charity Foundation in regard to hiring out this driver than there was with any livery call I received."

When asked whether the defendant corporation had any right to discharge Flood the witness answered, "Well, they could have sent him back.   He was in my employ," and went on to explain that the hospital people could have sent the driver home, and that he could not send him up if he did not suit them.   "Would you have discharged him then?" inquired counsel.   "Well, if I could not work him there I would have to discharge him," said Mr. Williamson.   "He had some other duties besides driving the ambulance."

When the evidence on both sides is considered all together and as a whole it really presents no contradiction of fact nor any condition of facts from which contradictory inferences can be drawn.   An ambulance owned by the defendant and bearing the name of its hospital was kept at a livery stable, the proprietor of which furnished a horse to draw the ambulance and a man to drive it on such occasions as the defendant might indicate.   The driver was hired and paid by the livery stable keeper who, it is evident, alone had the power to discharge him.   This is the fair import of Mr. Williamson's testimony.   It is apparent that if Flood, or any other driver whom he furnished to go with the ambulance, had proved unsatisfactory to the hospital authorities, Mr. Williamson would have substituted another driver, and would have discharged the objectionable individual unless he had enough other work for him to do.   There is nothing in this fact which tends to establish the relation of master and servant

between the defendant and such ambulance driver as might be furnished from the livery stable. On the contrary, the case is analogous to the hiring of a team with a driver from a liveryman, in which the liveryman remains liable for any injury to third persons due to the negligence of the driver, notwithstanding the fact that the person hiring the team may direct the driver where to go and at what speed. Such a contract does not make the driver the servant of the hirer or render his negligence imputable to the latter. (*Quarman* v. *Burnett,* 6 Mees. & W. 497; *Laugher* v. *Pointer,* 5 Barn. & Cress. 547; *Jones* v. *Corporation of Liverpool,* L. R. [14 Q. B. D.] 890; *Little* v. *Hackett,* 116 U. S. 366; *Lewis* v. *L. I. R. R. Co.,* 162 N. Y. 52; *Driscoll* v. *Towle,* 181 Mass. 416; *N. Y., L. E. & W. R. R. Co.* v. *Steinbrenner,* 47 N. J. L. 161, and see *Murray* v. *Dwight,* 161 N. Y. 301.)

While it is thus clear that when one lets out a vehicle and driver on hire to another, he does not place the coachman under the control of the hirer except so far as the destination and stopping places are concerned, and generally the rate of speed at which the vehicle is to be driven, it is equally plain that cases may arise in which there is such active interference by the hirer with the management of the team as to render him responsible for any negligent injury which may be inflicted upon a stranger by reason of such mismanagement. (*Donovan* v. *Laing, etc., Construction Syndicate,* L. R. [1 Q. B. D. 1893] 629.) In that event, however, as was pointed out by Lord Justice Bowen in the case cited, the hirer becomes liable "not as a master but as the procurer and cause of the wrongful act complained of." The defendant in the present case could not be charged with negligence on this theory. Its ambulance surgeon in no wise participated in any negligent act of the driver, assuming the driver to have been negligent. He had merely directed the driver where to go and had told him "to make time" or to go fast. He was seated at the rear of the ambulance where

he could not and did not see the accident.    There is nothing in the evidence to warrant an inference that he directed the driver to take the wrong side of the street in turning the corner or that he sanctioned the conduct of the driver in so doing.

The driver of the ambulance being at the time of the accident the servant of his general employer, Mr. Williamson, and subject primarily to his control, no liability for the driver's negligence toward the plaintiff can be imputed to the defendant in the absence of proof that the ambulance surgeon participated in such negligence. The learned counsel for the respondent, however, insists that even if this be true the hospital corporation may be held liable on another ground.    He asserts that ordinances are passed permitting ambulances and fire trucks to travel along the streets at a rate of speed which is prohibited in respect to other vehicles as being dangerous and perilous to life and property; and he contends in substance that those who introduce such a dangerous agency in the public streets assume a duty to exercise reasonable care in its operation which duty cannot be delegated to any one else so as to avoid liability.    This argument is based upon a misapprehension as to the legal effect of the ordinances.    The ordinance specially relied upon which gives ambulances the right of way in no manner authorizes the driving of such vehicles at a dangerous rate of speed.    It does not prescribe a high rate of speed or any rate whatever, but is merely equivalent to a command or direction that other vehicles shall give way to ambulances in the public streets.    There is no foundation, therefore, for the doctrine that an ambulance is necessarily a dangerous instrumentality.    Furthermore, it does not appear that the accident in the present case was in any manner due to the speed at which the ambulance was driven.

I do not deem it necessary to say anything further in support of the conclusion that it is our duty to reverse this judgment, except to point out briefly certain essen-

tial differences which seem to me to exist between the facts in two cases largely relied upon by the respondent and the facts in the case at bar.

In *Baldwin* v. *Abraham* (57 App. Div. 67; affd., 171 N. Y. 677) the plaintiff had been injured by collision with a van bearing the defendants' name. The evidence did not point to any person other than the defendants as responsible for the driver's negligence except, possibly, a firm from which the defendants hired a large number of trucks to make Christmas deliveries of merchandise. As to these hired wagons the testimony indicated that the defendants exercised some control over the delivery of their goods by these hired wagons; and the Appellate Division was of the opinion that the unknown owner of the truck in question could not be said as matter of law to have contracted independently for the delivery of the defendants' goods even if the driver had been hired with the truck. The case differs radically from the present case in the actual absence of any real evidence tending to disprove the inference of ownership and control properly deducible from the fact that the van bore the name of the defendants.

In *Howard* v. *Ludwig* (171 N. Y. 507) a firm of truckmen furnished to the defendants a truck, horses and driver for the purpose of delivering goods sold by them to their customers on Staten Island. The driver reported every morning with the truck and horses at the defendants' place of business, received a list of deliveries from the defendants' shipping clerk, loaded the goods upon the wagon, delivered them to the various customers and after his work was done returned to the stable of the contracting truckman. At the time when the accident occurred which injured the plaintiff the driver was fulfilling the defendants' contracts by delivering their goods on Staten Island. It was held by a closely divided court that the arrangement whereby the driver thus took charge of the delivery of the goods created the relation of master and

servant between him and the defendants so that they became liable for his negligent acts.   There, however, the original master had entirely abandoned all control of the driver to the new master who for the time being appropriated and controlled his service in carrying on their business.   The distinction is plain between such an arrangement and one whereby a driver in the employ of a liveryman is sent out upon special occasion or whenever required to drive an ambulance.   There is nothing in either of these decisions which can fairly be regarded as sustaining the position of the respondent.

The distinction between such cases and one like the present is well pointed out by Mr. Justice MOODY in *Standard Oil Co.* v. *Anderson* (212 U. S. 215).   Where one furnishes another with men to do work for him and places them under his exclusive control in its performance those men become *pro hac vice* the servants of him to whom they are furnished and he is responsible for their negligence because the work is his work and they are his workmen for the time being.   On the other hand, where work is undertaken to be performed by the person who furnishes the workmen through servants of his selection and he retains direction and control he remains responsible for any negligence on their part in the conduct of the work.   "The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman.   In such cases the hirer, though he suggests the course of the journey and in a certain sense directs it, still does not become the master of the driver and responsible for his negligence, unless he specifically directs or brings about the negligent act." (p. 222.)

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.