MIRANKER v. WILLIAMS et al.

(Supreme Court, Appellate Term, First Department. April 11, 1916.)

MASTER AND SERVANT ⟨⟩301(4)—NEGLIGENCE OF SERVANT—RESPONSIBILITY OF MASTER.

One engaged in selling supplies for contractors and steamships, necessitating delivery of the goods, who contracted with a licensed truckman to make deliveries and to put his name plate on the truck while such deliveries were being made, was not responsible for injuries to a child resulting from the negligence of the driver of the truck, selected, hired, and paid by the owner thereof, the only one who could discharge him, who had received directions from the shipping clerk of the supplies contractor, since, to render one liable as a master, the actual control and dominion

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
158 N.Y.S.—18 ·

over the servant must have been surrendered by the regular employer and assumed by the person in whose business he is engaged at the time of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1213, 1214; Dec. Dig. ☜301(4).]

Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Harry Miranker against William E. Williams and others. From a judgment for plaintiff, after trial before the court without a jury, defendant Williams appeals. Judgment reversed, and complaint dismissed.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Rufus L. Weaver, of New York City, for appellant.

Breitbart & Breitbart, of New York City (Bernard Breitbart and George F. Hickey, both of New York City, of counsel), for respondent.

DELEHANTY, J.   The plaintiff has recovered damages suffered through injuries to his infant son, resulting, as alleged, from the negligence of one Paretti, the driver of the truck which collided with a bicycle ridden by the infant.   The main question involved in the appeal is whether or not the defendant is responsible as master for the negligence of the driver of the truck.   It appears that the defendant Williams was in the business of selling supplies for contractors and steamships, which necessitated hauling for delivery of his goods.   He owned no horses nor trucks, but contracted with one Assiro, a licensed truckman, to make deliveries and to put his name plate on the trucks while such deliveries were being made.   This practice prevailed for three years prior to the accident in question.   During all that time Assiro had in his employ the driver, Paretti, whose duty it was to go daily to the stable where the truck was kept and, without further directions, proceed therewith to the defendant's place of business, where he would receive directions from the defendant's shipping clerk.   This he did on the day of the accident.   Paretti was not alone selected, hired, and paid by Assiro, but Assiro was the only one who could discharge him. The trial justice held that Paretti was in the employ of defendant, and this we think was error.

Cases such as these present the somewhat difficult question whether one in the general employment of one person is, with respect to a particular transaction, the servant of another.   There are numerous authorities pro and con upon the subject, but all to the effect that to render a defendant liable the actual control and dominion over the servant must have been surrendered by the regular employer and assumed by the person in whose business he is engaged at the time of the accident.   The case at bar we think, in principle, is not unlike Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883; Weaver v. Jackson (1st Dept.) 153 App. Div. 661, 138 N. Y. Supp. 609; Vasligato, an

Infant, etc., v. Yellow Pine Co., 158 App. Div. 551, 143 N. Y. Supp. 817.

In the Kellogg Case the defendant owned, controlled, and managed a hospital, and in connection therewith owned and used an ambulance. As occasion arose for the use of the ambulance, a livery stable keeper furnished a horse and driver therefor, the driver being directed by defendant where to go. The driver was employed by the stable keeper by the week, and when not engaged in driving the ambulance worked around the stable. The injury to the plaintiff resulted from his negligent driving of the ambulance. It was held that defendant was not responsible for the driver's negligence. The opinion cites Standard Oil Company v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, to the effect that:

"The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey and in a certain sense directs it, still does not become the master of the driver and responsible for his negligence, unless he specifically directs or brings about the negligent act."

In the present case there is not the slightest claim that Williams interfered in any way with Paretti's management of the truck in question. True, he directed Paretti when and where to make deliveries, but not how to manage or control his horse and truck, or the way to reach his destination.

In Weaver v. Jackson, supra, an action for personal injuries sustained by the fall of a heavy case of goods, caused by the negligence of the driver of a truck in permitting it to start away from a platform, it appeared that plaintiff's master, one Sternau & Co., had the exclusive use of the horse and truck, which was furnished by defendants at a fixed rate per week, under an agreement that defendants should assume responsibility from the time the goods were delivered to them until they were delivered at their destination. The defendants employed and paid the driver, whom they selected and had the right to discharge. The plaintiff's master did not interfere in any way with the management of the truck and horse by the driver. The complaint was dismissed, upon the theory that the driver of the truck was the servant of the plaintiff's master. Judge Scott, writing for a unanimous court, held that the case under consideration fell directly within the principle enunciated in Kellogg v. Church Charity Foundation, supra, and many others to the same effect. His opinion concludes, and I quote it for its application to the case at bar, as follows:

"The driver of the truck was employed and paid by defendants, who alone selected him, and had the sole and complete power to discharge him. So far as concerned the times and places at which deliveries were to be made, the driver undoubtedly was subject to the orders of Sternau & Co.; but so far as concerned the handling and management of the horse and truck, he was the defendants' servant. The distinction is perfectly clear and has frequently been pointed out."

In Vasligato v. Yellow Pine Co., supra, it appeared that, when defendant had to make large deliveries of lumber, it engaged extra horses and drivers from a public truckman, one McAllister. While driving

a lumber truck owned and used by defendant, but driven by a driver furnished by McAllister, it ran over plaintiff. This driver received his wages from McAllister. On the morning of the accident the defendant had reported at the McAllister stables, where he took his orders for the day. He was to harness his horses, go with them to defendant's lumber yard, and drive out defendant's loaded trucks as defendant directed. At the yard the driver was given the destination of his load, and he proceeded to make deliveries without being accompanied by any representative of defendant. At the end of the month defendant paid McAllister at the rate of $7 a day for the horses and driver. Defendant could not select, engage, or discharge the driver; if dissatisfied, defendant could only complain to McAllister, and perhaps demand another driver to be substituted. The defendant had merely told the driver where to drive, without directing his route or otherwise interfering with his actions. Held, that the driver remained the servant of his general employer and had not come under the exclusive control of defendant; that, as the legal relation of master and servant did not exist between the defendant and the driver, the complaint was properly dismissed, citing Kellogg v. Church Charity Foundation, supra, and Weaver v. Jackson, supra.

In the present case Paretti was selected, employed, and paid by Assiro, who alone could discharge him. This, in our opinion, in view of the authorities cited, made him the servant of Assiro, and not of Williams.

The respondent calls to our attention and relies upon Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, and Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172, for a sustention of the judgment herein; but those authorities are clearly distinguishable from the facts herein. In the Higgins Case a building owned by defendant had been damaged, and a contractor was engaged in repairing and restoring it, and, among other things, was to furnish elevators, and they were then in his control and use. He needed a man to assist him in operating one of the elevators, and obtained from defendant one Algar for that purpose, whose negligent operation of the elevator was responsible for the accident. The distinguishing feature in that case is that the contractor had control of the elevator. It was his property, and it was he who gave orders to Algar.

Howard v. Ludwig was decided by the Court of Appeals in 1902 by a closely divided court, and is well distinguished by Mr. Justice Scott in Weaver v. Jackson, supra.

In view of the foregoing, we conclude that the judgment herein should be reversed, with $30 costs, and the complaint dismissed, with costs.

LEHMAN, J. (dissenting). The plaintiff was injured by a collision with a truck which bore the sign of the defendant Williams. Both the truck and the driver were engaged exclusively in the work of delivering packages sent out by Williams. It seems to me that these facts are sufficient to warrant the inference prima facie that the driver of the truck was in the defendant Williams' employ. Upon

somewhat similar facts the Court of Appeals, in the case of Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883, held that such an inference was warranted, but in that case the court held, further, that the undisputed facts shown by the defendant rebutted this presumption as a matter of law.

The question presented in this case is strikingly similar to the question presented in the case in the Court of Appeals, but I cannot concur in the view that either the decision or reasoning in that case requires us to hold that the driver in the present case was, as a matter of law, not in the employ of the defendant Williams. In both cases the driver was hired subject to discharge by a third party, and his wages paid by that party. In both cases the driver was therefore in the general employ of the third party. In the Kellogg Case the defendant kept an ambulance in a livery stable, and when a call came in the livery stable keeper would furnish a horse and driver for the ambulance. No special driver was kept by the livery stable man for this work, but when a call came in the livery stable man would send out any one of three or four drivers. He testified that:

"There was no different, no other, arrangement with the Church Charity Foundation in regard to hiring out this driver than there was with any livery call I received."

In that case the court held that the undisputed facts established that there was no greater degree of control over the driver of the Church Charity Foundation than exists in the ordinary case of the hire of a conveyance, with a driver, from a livery stable, and that the defendant was therefore not liable for the negligence of the driver upon any theory of respondeat superior. The court did not, however, hold that in no case where a conveyance, horse, and driver was hired out would the hirer become the master of the driver, nor did it overrule its previous decisions in the cases of Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, affirmed 171 N. Y. 677, 64 N. E. 1118, and Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172. On the contrary, it distinguished those cases, and inferentially held that they still represent the law, though probably the later case has placed a definite limitation upon any extension of the rule of the earlier cases. The court stated:

"The distinction between such cases and one like the present is well pointed out by Mr. Justice Moody in Standard Oil Co. v. Anderson, 212 U. S. 215 [29 Sup. Ct. 252, 53 L. Ed. 480]. Where one furnishes another with men to do work for him, and places them under his exclusive control in its performance, those men become pro hac vice the servants of him to whom they are furnished, and he is responsible for their negligence, because the work is his work and they are his workmen for the time being. On the other hand, where work is undertaken to be performed by the person who furnishes the workmen through servants of his selection, and he retains direction and control, he remains responsible for any negligence on their part in the conduct of the work."

In the present case it is shown that for three years the defendant had been hiring trucks, horses, and drivers from one Assiro. Assiro did no general business of hiring out trucks, but he and his trucks and

drivers worked only for the defendant. The driver for whose negligence the defendant was responsible was in the general employ of Assiro during all this time, but did no work except in driving the truck hired to the defendant. The defendant could undoubtedly have refused to allow the driver to work for him, and such refusal would have resulted in the driver's discharge from the general employment, as well as from his special employment, if special employment existed. The driver received no orders from his general employer, except a general instruction to take the truck to defendant's place of business each morning. Assiro was not interested in the work that the driver performed during the day. It is not shown that he assumed any responsibility to the defendant for the correct delivery of the packages. His contract was apparently only to furnish a truck, with horse and driver, to perform any services required by the defendant. While apparently the defendant gave no directions, except as to places of delivery, it is not shown that he did not have the full right and power to give any directions he might see fit.

In this case as in the case of Baldwin v. Abraham, supra, these undisputed facts seem to me insufficient to rebut, as a matter of law, the original inference that the driver was under the defendant's control, and there is sufficient evidence of the two elements which the Court of Appeals of this state and the Supreme Court of the United States consider determinative of the question of the liability of the special employer. The driver at the time of the accident was engaged in the defendant's work, and the inference that he was under the defendant's control and direction seems to me fully warranted upon the entire testimony.

Judgment should therefore be affirmed, with costs.