STEPHEN McNAMARA, as Administrator, etc., of PHILIP McNAMARA, Deceased, Respondent, v. ABRAHAM LEIPZIG, Appellant, Impleaded with MILDRED V. HINKLE, Defendant.

First Department, December 14, 1917.

Master and servant — negligence — when chauffeur of garage company becomes employee of hirer of automobile with chauffeur, so that hirer is liable for negligence of chauffeur.

Where, in an action to recover damages for the death of plaintiff's intestate, a boy eight years of age, who was struck and killed through the negligence of the chauffeur of an automobile in which the defendant was riding, it appeared that a garage company had, under a written agreement, rented and turned over to the defendant for a period of three months an automobile and the services of a chauffeur, and had exercised no control either over the automobile or the chauffeur during the period of the agreement, and had instructed the chauffeur to take his orders from the defendant, and the defendant not only gave the chauffeur all of his orders but actually interfered with the operation of the automobile by substituting his judgment for that of the chauffeur ·as to the route to be taken on the occasion of the accident, said chauffeur, although in the general employment of the garage company, had become *pro hac vice* the servant of the defendant, so as to render him liable for the negligence.

SCOTT, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendant, Abraham Leipzig, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of March, 1917, upon the verdict of a jury for $7,500, later reduced by consent to $2,500, and also from an order entered in said clerk's office on the 3d day of April, 1917, denying appellant's motion for a new trial made upon the minutes.

*James A. Nooney* of counsel [*Alfred W. Meldon,* attorney], for the appellant.

*Don R. Almy* of counsel [*William S. Evans* with him on the brief], *Almy, Van Gordon, Evans & Kelly,* attorneys, for the respondent.

Sʜᴇᴀʀɴ, J.:

This action was brought to recover damages for the death of plaintiff's intestate, a boy eight years old, who was struck and killed through the negligence of the chauffeur of an automobile in which the defendant Leipzig was riding. The main controversy is concerning the liability of the defendant for the negligence of the chauffeur. The defendant did not own the automobile, but had hired it and the services of the chauffeur from the Concord Garage Company for a period of three months under a written contract. The contract, after reciting that the defendant " is desirous of hiring from the party of the second part a Stearns, 1911 Model automobile and services of a chauffeur, for a period of three months, * * * at a monthly rental of Three hundred Dollars," provided that " The party of the second part [the garage company] agrees to and with the party of the first part [the defendant Leipzig], to rent to the party of the first part from the 12th day of July, 1915, up to and including the 11th day of October, 1915, a Stearns, 1911 Model automobile which is to be used by the party of the first part during said period at any hour of the day or night that the said party of the first part desires to use same. It is further agreed between the parties hereto that the party of the second part is to engage and furnish to the party of the first part, a chauffeur to operate and run said automobile during the period heretofore mentioned at its own cost and expense." The garage company agreed " to pay all expenses for gasoline used in propelling said automobile, together with any and all expenses for repairs or supplies used in said automobile." The defendant agreed " to pay for the use of the aforesaid automobile and services of a chauffeur during the period heretofore mentioned, the sum of Three Hundred Dollars per month." The garage company agreed to " procure insurance covering the party of the first part from any and

all liability by reason of accidents, injuries of any kind or from any cause whatsoever." It was not the regular business of the garage company to hire out cars in this manner, but this particular car had been left with the garage company for that purpose. After making the contract the garage company, through its president, Holmes, hired a chauffeur who was then placed under the orders of defendant. Holmes testified: " Q. And then did you tell him where to go? A. I just told Mr. Leipzig's address. That was all. Q. And what else did you say to him? A. Nothing else. Q. Did you tell him to drive Mr. Leipzig? A. Certainly I did, yes, sir. Q. And did you tell him how often he should drive Mr. Leipzig? A. No. Q. Did he know when he should drive him? A. I guess he did. I guess he got his orders from Mr. Leipzig."

No directions were given by the garage company to the chauffeur after the hiring. Holmes testified: " Q. After you had that initial conversation with the chauffeur did you have any more conversations with him at all? * * * A. Not at all. Q. Not at all? A. That is all."

After about six weeks the first chauffeur resigned and the garage company engaged the chauffeur Duffy, · who was driving the automobile at the time of the accident. Duffy testified that he drove no other car during the period of the contract and that he was, when hired by the garage company, put under the defendant's orders. With reference to the instructions given to him when engaged by Holmes, the president of the garage company, Duffy testified: " He just told me Mr. Leipzig had the car rented monthly, by the month, and that I was to drive it and follow Mr. Leipzig's orders, whatever orders Mr. Leipzig gave me." From that time on Duffy did what defendant told him · to do, reported to him daily at the time fixed by the defendant, took the automobile back to the garage whenever the defendant directed and received instructions from the defendant, each day, when to report the following day. Defendant paid for the chauffeur's luncheon whenever it was necessary for the chauffeur to be out with the automobile at luncheon time and paid for some one to watch the automobile when it was necessary for the chauffeur to leave it unattended. The defendant

was the only one who issued any orders to Duffy. On the day of the accident, when defendant had directed Duffy to take him home from City Island, he directed Duffy specifically to drive across One Hundred and Thirty-fifth street, although Duffy, if left to take the course which in his judgment was the better, would have taken the crossing at One Hundred and Forty-ninth street. The accident happened at One Hundred and Thirty-fourth street and Madison avenue.

The basis of the defendant's liability is, of course, that although the chauffeur was in the general employment of the garage company, the evidence shows that he had become, *pro hac vice,* the servant of the defendant. That a sufficient foundation was laid for holding the defendant on this well-established basis of liability seems perfectly clear under a long line of authorities, among which may be mentioned *Hartell* v. *Simonson & Son Co.* (218 N. Y. 345); *Schmedes* v. *Deffaa* (214 id. 675); *Standard Oil Co.* v. *Anderson* (212 U. S. 215, 220–222); and *Howard* v. *Ludwig* (171 N. Y. 507).

In *Hartell* v. *Simonson & Son Co.* (*supra*) the general employer sent a driver with a team of horses to the defendant in that case, with instructions to take such orders as were given to him by defendant, and after the day's work to come back to the stable. The defendant could not discharge the driver, and paid him no wages. The court held that the defendant in that case was liable for the acts of the driver, stating: " A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, who is liable for his negligence. But if the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence. * * * In the case under consideration, Durr, the truckman, did not stand in the relation of an independent contractor to the defendant. He did not undertake to deliver lumber for the defendant. He simply furnished a team and driver to enable the defendant to do its own work. The case is the same as if the defendant had bought a team and hired a driver to aid in its business. It is not very material, so far as the defend-

ant's liability is concerned, how it came by the instrumentalities with which it carried on its lumber business."

Here, as in the *Hartell* case, it cannot be said that the garage company assumed the relation of an independent contractor for the defendant. Paraphrasing the language of the opinion just quoted, the garage company did not undertake to transport the defendant from one point to another, but simply furnished an automobile and chauffeur to enable the defendant to ride from place to place as he saw fit, and during the period of the contract to exercise full control over the automobile and chauffeur.

It is contended that the case is within the rule applied in *Kellogg* v. *Church Charity Foundation* (203 N. Y. 191) and apparently that, if there is any conflict between that case and the *Hartell* and *Schmedes* cases, the rule in the *Kellogg* case is more logical and the better one to follow. I can see no conflict between those cases and no controlling similarity between the case at bar and the *Kellogg* case. The facts in the *Kellogg* case are too familiar to justify restatement, but it will be recollected that the decision rested upon the uncontradicted evidence that the driver of the ambulance at the time of the accident was subject primarily to the control of his general employer, that such control was never in any way abandoned or surrendered to the defendant, and that the arrangement between the general employer and the defendant was that the general employer, who kept a livery stable, would furnish a horse to draw the ambulance and a man to drive it upon such special occasions as the defendant might indicate. Here the general employer rented and turned over to the defendant for a period of three months an automobile and the services of a chauffeur, had and exercised no control over either the automobile or the chauffeur during the period of the contract, instructed the chauffeur to take his orders from the defendant, and the defendant not only gave the chauffeur all of his orders, as he had a right to do under his contract, but actually interfered with the operation of the automobile by substituting his judgment for that of the chauffeur as to the route to be taken on the very occasion of the accident.

It is said that if the defendant is liable in this case, there

·is no reason, in principle, why one who hires a taxicab for a particular journey should not be liable for an accident happening on the way. Of course, we know that there would be no liability whatever in the latter case, unless the passenger interfered with and assumed to control the actual management of the vehicle. We also know that in numerous cases analogous to the one at bar liability has been uniformly enforced. Of course the test is not the period of the hiring, whether for an hour, a day or three months. The test is whose work is being done and who, during the course of that work, has or exercises control over the doing of that work. Where the relation between the general employer and the party sought to be held is that of independent contractor the general employer is liable. It is his work that is being done by the employee when the general employer agrees to transport a passenger or the goods of another from one specified place to another. Such would be the case where a garage company agreed to transport a man from his residence to his place of business every morning and back again at night. Such would be the case in any contract whereby the general employer bound himself to perform specified services for another. In all such cases the servant is engaged in the business of his general employer. A radically different situation arises when, instead of the general employer undertaking to perform specified services for another, he turns over and rents out both the instrumentality of service and the services of the necessary employee to be used by another in the other's own business or for his own purposes and under such circumstances as naturally and necessarily deprive the general employer both of the right and the opportunity to control and direct the employee and vest that control and direction in another. Each case will have to be separately examined in the light of its peculiar facts, but in every case the determining factor will be whose work was being done and who. had and exercised control over the employee in doing that work. In the case at bar, as above pointed out, the evidence shows that there was no relation of independent contractor between the general employer of the chauffeur and the defendant and that the chauffeur was doing the defendant's work under his immediate direction and control.

It is contended that the judgment should be reversed for alleged error in admitting in evidence the policy of insurance issued to the defendant, reliance being had on *Simpson* v. *Foundation Co.* (201 N. Y. 479). This is not a case where the evidence was unwarrantably dragged in in order to influence the amount of the jury's verdict and create an atmosphere prejudicial to the defendant, as in the *Simpson* case. It was the defendant who brought out the fact that casualty insurance had been provided for and, if the contract were lived up to, had been procured, for the defendant introduced in evidence the contract for the hiring of the automobile, clause 6 of which expressly provided that the garage company should procure such insurance for the defendant. The matter came into the case naturally, on cross-examination of the defendant, in the course of an attempt on the part of the plaintiff to impeach the credibility of the defendant by showing that the defendant had kept and retained a rebate on the policy which should have gone to the garage company. Further, if prejudice entered into the amount of the jury's verdict because of this, the result was effectually nullified by the trial court's action in reducing the verdict from $7,500 to $2,500.

The judgment and order should be affirmed, with costs.

SMITH and PAGE, JJ., concurred; CLARKE, P. J., and SCOTT, J., dissented.

SCOTT, J. (dissenting):

The plaintiff has recovered damages for the death of his intestate resulting from the negligence of a driver of an automobile. The appellant raises no question as to the negligence of the driver or as to the amount of the verdict, and the only question we find it necessary to consider is as to the responsibility of the appellant for the driver's negligence.

The automobile in question belonged to the Concord Garage Company and was hired by the appellant, for a term of three months, under a written contract which was read in evidence. Under the terms of this contract the Concord Garage Company rented an automobile, known as a " Stearns 1911 Model " which was " to be used by the party of the first part [appellant] during said period at any hour of the day or night that the said party of the first part desires

to use same." The garage company further agreed " to engage and furnish to the party of the first part [appellant] a chauffeur to operate and run said automobile during the period heretofore mentioned at its own cost and expense." The garage company further agreed to furnish all needed gasoline and other supplies, and to bear the cost of all necessary repairs. For this the appellant agreed to pay a fixed monthly rent.

It appeared in evidence that appellant had no voice in the selection of the chauffeur who was to drive the car, and that during the term of the contract the garage company had furnished at different times two different chauffeurs. The appellant simply ordered the car to be sent for him when he wanted it, and when it came used it with whomsoever the garage company had sent with it as its driver, appellant's relation to him being confined to ordering him where to go. The only crucial question in the case, as we see it, is whether or not, under these circumstances, the appellant is liable for the negligence of the chauffeur who happened to be driving the car when the accident occurred.

The question when a servant in the general employment of one master shall be deemed the servant *ad hoc* of another so as to render that other and not the general employer liable for his negligent acts has been frequently considered, and the basic principles upon which it is to be answered in a given case are well settled, although not always kept in mind. The theory upon which the rule of *respondeat superior* is applied to such cases is that the master is responsible for the wrongs of his servant, not because he has authorized them, nor because the servant in his negligent conduct represents the master, but because he is conducting the master's affairs and the master is bound to see that his affairs are so conducted that others are not injured. (*Farwell* v. *Boston and Worcester Railroad Corporation*, 4 Metc. 49; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, 221.) In the case last cited Mr. Justice Moody illustrates the rule as follows: " It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it, nor is willing to take such persons into his general service. He may then enter into an agreement with

another.  If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished.  But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them.  In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are for the time his workmen.  In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work.  To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.  Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."

From this point of view the question as to who selects the servant in the first instance, and has the power to discharge him and who pays his wages is not determinative of the question who shall be held responsible for his negligence, although those matters may frequently throw a strong light upon the fundamental question as to whose servant he was when he committed the negligent act.

The rule thus stated by Mr. Justice Moody is amply sustained by the adjudicated cases in England and in our own State.  In *Higgins* v. *Western Union Telegraph Co.* (156 N. Y. 75) it is said:  " The question is whether, at the time of the accident, he [the servant] was engaged in doing the defendant's work or the work of the contractor.  *  *  *  The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct."  And in the latest case upon the subject in the

Court of Appeals the rule is formulated thus: " A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, who is liable for his negligence. But if the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence." (*Hartell* v. *Simonson & Son Co.*, 218 N. Y. 345, 349.)

Applying this rule to the case at bar it appears indisputably that the garage company contracted for a fixed consideration and a stated period to furnish an automobile and driver for the appellant's use. It bore to him the relation of a general contractor. The defendant became invested with no right of superintendence or control over the driver, except the right to indicate when and where he wished to be driven. In the common case of hiring a cab from a livery stable or cab stand for transportation for a single trip or by the hour or day no one would be heard to argue that the driver became *pro hac vice* the servant of the hirer. One of the earliest cases decided was where a horse and driver were furnished by a liveryman. It was said that in such a case the hirer, although he suggests the course of the journey and in a certain case directs it, still does not become the master of the driver unless he specifically directs or brings about the negligent act. (*Quarman* v. *Burnett*, 6 M. & W. 499.)

In *Schmedes* v. *Deffaa*, reversed in the Court of Appeals on the dissenting opinion in this court (153 App. Div. 819; 214 N. Y. 675), it appeared that H., an undertaker, being called upon to furnish a number of carriages for a funeral which he was conducting, contracted with Deffaa to furnish them. Deffaa had not enough carriages and hired a carriage and driver from N., another liveryman, to make up the required complement which he had agreed to furnish. An accident occurred owing to the negligence of the driver hired by Deffaa. It was held that the latter was liable because the driver at the time was engaged in doing his work, although selected and paid by N. But it was also said that the undertaker could not have been held liable because, although it was his

business originally to supply carriages for the funeral, Deffaa had undertaken, as a general contractor, to do that part of the work. We think that the present case falls within the category of those in which the driver is to be deemed the servant of the general contractor who employed him, and not of the appellant to whom the service was rendered. The garage company contracted to furnish appellant, for a specified period, with automobile service as he might require it. The type of car to be used was named in the contract, but in every other respect the means and method of carrying out the contract were to be under the control and direction of the garage company. There is no essential distinction between such a case, and the case of one who hires an automobile or a cab for a single trip, or an hour or a day. In each case the business upon which the driver is employed is that of the general contractor who engages to furnish automobile service to the hirer, reserving entire freedom in the selection and employment of the driver, and retaining general supervision and control over him.

It frequently happens that the question as to who is the responsible master of a negligent servant is one depending upon evidence from which different inferences may be drawn, thus becoming a question for the jury. This is not such a case. The relation between the garage company and the appellant is definitely established by a written contract. We are, therefore, at liberty to dispose of the case as a matter of law, as it clearly is when the facts are not open to dispute.

The judgment and order appealed from should be reversed and the complaint dismissed, with costs to the appellant in this court and the court below.

CLARKE, P. J., concurred.

Judgment and order affirmed, with costs.