HERBERT I. BAKER, Respondent, *v.* HOMEOPATHIC HOSPITAL and ALLEN & ARNINK AUTO RENTING COMPANY, Appellants.

Third Department, December 29, 1919.

Master and servant — negligence — servant of garage owner driving ambulance accompanied by orderly of hospital — when both garage owner and hospital liable for negligent operation of ambulance — question for jury.

In an action to recover damages resulting from an ambulance belonging to the defendant hospital colliding with the plaintiff's automobile it appeared that the hospital delivered its ambulance to the other defendant, a garage owner, under an agreement whereby the garage owner was to supply a

man to drive the ambulance whenever it should be called out by the hospital, and that said driver received his directions from the hospital as to where to go. It appeared also that on the day of the accident an orderly of the hospital accompanied the driver and sat on the seat with him, and that said orderly had charge of placing the patient in the ambulance and closing the doors. The evidence was conflicting as to whether or not the orderly directed or interfered with the driver in the operation of the ambulance.

On all the evidence, *held*, that a charge given at the request of the plaintiff that if the jury found that the speed of the ambulance was the proximate cause of the accident and also found that the orderly of the hospital participated by direction or interference in the operation of the automobile his act, if negligent, is chargeable to the hospital, was justified.

The liability of both defendants was a proper question for the jury.

JOHN M. KELLOGG, P. J., and WOODWARD, J., dissent, with memorandum.

APPEAL by the defendants, Homeopathic Hospital and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 30th day of April, 1919, upon the verdict of the jury for $700, and also from an order entered in said clerk's office on the 1st day of May, 1919, denying defendants' motion for a new trial made upon the minutes.

*Walter H. Cogan* [*William E. Woollard* of counsel], for the appellant Allen & Arnink Auto Renting Company.

*Ainsworth, Carlisle & Sullivan* [*John N. Carlisle* of counsel], for the appellant Homeopathic Hospital.

*Rosendale, Hessberg, Dugan & Haines* [*P. C. Dugan* of counsel], for the respondent.

LYON, J.:

On October 31, 1918, the ambulance belonging to the Homeopathic Hospital was delivered to the defendant the Allen & Arnink Auto Renting Company, for one month, under the agreement that it was to be stored in the garage of the company, washed and kept in good condition, the company to furnish a driver to answer calls night or day for seventy-five dollars per month. Upon the call the driver who happened to be designated by the company would take the ambulance to the hospital, where he would receive directions where he was required to go. On the evening of November 8, 1918, a call

was made for the ambulance and it was sent to the hospital. Upon its arrival an employee of the hospital, Buckley, termed an orderly, took his place upon the front seat of the automobile and directed the driver to go to West Albany. Upon the arrival of the ambulance there, an injured employee of the New York Central Railroad Company, accompanied by a friend, was assisted into the ambulance. The orderly resumed his seat alongside the driver and the ambulance started back towards the hospital. In returning it was driven down Central avenue and as it neared the place of the accident the driver noticed an automobile coming out of a side street and he turned to the right to avoid it and collided with plaintiff's automobile standing near the curb in front of his house, considerably damaging plaintiff's car.

There was evidence that the hospital ambulance as it passed along Central avenue was being driven at a speed of from forty to fifty-five miles an hour, and that it swerved from side to side. The ambulance had a door at the rear through which the injured man was taken, and through which his friend had entered, and which was then closed by the orderly. In addition to the door at the driver's seat there was a large heavy door on the right side of the ambulance. There was evidence that this door was swinging as the ambulance passed down Central avenue, and that it came into contact with plaintiff's automobile. The collision tore off this door and damaged other parts of the hospital ambulance.

The driver of the ambulance testified that the orderly told him to drive faster, and urged him to make more speed, and that as the orderly saw the automobile approaching from the side street, he directed him to drive around it. The orderly upon the other hand denies that he gave any directions as to speed, and while he knew the ambulance was being driven at a dangerous rate and was afraid that an accident would happen, he did not say anything to the driver for fear the driver would tell him " where to go quick." It appears that complaints had been made to the hospital regarding the speed at which the ambulance was driven, and that on November 4, 1918, the hospital had notified the defendant company to instruct their drivers not to exceed twenty-five miles an hour, and in traffic at less speed according to conditions. The

president of the renting company testified that the company undertook to store the ambulance and send it with the driver to the hospital upon the understanding that it should be free from all liability for any damage caused in the operation of the ambulance. This was denied by the president of the hospital.

The court submitted to the jury the question whether at the time of the accident the driver of the ambulance was the servant of the hospital or the servant of the automobile company, and charged that if the driver at the time of the accident was the servant of the automobile company it was liable for his negligence, and if it was not, the verdict should be for no cause of action against the automobile company, and for damages of the plaintiff against the hospital; that if the jury found that the driver was the servant of the automobile company and his negligence caused the accident, but that if they found that his negligence was participated in or procured by direction of the orderly of the hospital, they could find a verdict against both defendants. The jury found a verdict in favor of the plaintiff against both defendants, and from the judgment entered thereon, and from the orders denying each defendant a new trial, this appeal is taken. The right of the plaintiff to recover is not seriously disputed, but each defendant contends the other defendant is the one solely liable.

At the close of the charge the following exception was taken and request to charge made: " Mr. Carlisle: I want to except to your honor's statements to the jury on the question as to whether or not Buckley gave directions to Mesick to go faster or go to the right, and I want to ask you to charge that if they find in this case that this contract between Allen & Arnink and the Homeopathic Hospital required Allen & Arnink to furnish the driver of this car, that no matter whether Buckley directed the driver where to go, or at what speed to go, that such directions of themselves, did not make Mesick the servant of the Homeopathic Hospital, or render his negligence imputable to the Homeopathic Hospital, and there cannot be any recovery from these facts against the Homeopathic Hospital. The Court: I so charge. [No exception was taken.] * * * Mr. Dugan: In view of Mr. Carlisle's request to charge as to what Buckley said, I ask

your honor to charge that if the jury find that the speed of this ambulance was the proximate cause of the accident, and also find that Buckley, the orderly of the hospital, participated by direction or inference or suggestion in the speed, or in the cutting around at Robin street, his act of negligence, if found to be negligent, is chargeable to the hospital. The Court: I so charge. Mr. Carlisle: Exception. My request as I made, I covered my point." The appellant hospital complains of this as error. The first request to which no exception was taken was in favor of the hospital. The latter was fully justified by the evidence.

The testimony shows that Buckley was the day orderly and was just going out of the door at ten minutes of seven when Superintendent Littlefield asked him if he would take a trip to West Albany. He assented and took a seat by the side of Mesick. She asked him because the night orderly would not be on; it was his day off. He picked the slip off the desk, went out to the car and told Mesick to go to West Albany. Buckley, whose manner of testifying would create a very unfavorable impression upon the jury, testifies in substance as follows: " I told in the presence of Mr. Griffiths that the car was running about 55 miles an hour. We made 45 miles an hour after leaving Watervliet avenue. I did not ask Mesick to slow down, did not ask anything. I had in my mind to get off the damn thing. He lies when he said I told him to go faster. On the way down I sat and smoked a cigarette. I was enjoying it at 55 miles an hour. I drink. I might have drank that day, don't know. I had worked for the hospital one year and two months, had been orderly all of the time. I said to Mesick, ' you need not feel badly, it was not your fault.' I didn't say, you were under my directions. All I cared about was myself. I didn't care anything about the ambulance or the patient. I did not attempt to have him slacken speed."

Mesick testifies that he had been to the hospital before, and that he got his orders from whoever accompanied the ambulance. He testifies that Buckley told him to go over Watervliet avenue and down Central avenue, which he did; that he got orders from Buckley at the hospital; that Buckley got in beside him and said, " Hurry up, I don't know what

it is." Mesick operated this car the night before that for the first time. He went where the judgment of the orderly told him to go. Buckley told him to stop, and he did stop about fifty feet below the accident. Buckley told Mesick not to feel bad, that it was not his fault. The rate of speed is fifteen miles an hour in all cities. Between Eagle and Swan streets on Washington avenue, Buckley told Mesick to hurry up; Mesick was driving twenty-five to twenty-eight miles an hour when he told him this, and he then drove five miles an hour faster. Mesick put the brake on his car for the purpose of stopping it. Buckley told him to pull to the right and go around the car. Buckley took charge of closing the back and side doors.

Under the rule laid down in *Kellogg* v. *Church Charity Foundation* (203 N. Y. 191), and *Hartell* v. *Simonson & Son Co.* (218 id. 345), I think the case was properly a question for the jury as to the liability of both defendants.

The judgment should be affirmed.

All concur, except JOHN M. KELLOGG, P. J., dissenting, with memorandum, in which WOODWARD, J., concurs.

JOHN M. KELLOGG, P. J. (dissenting):

The evidence of the president of the defendant auto renting company of a pretended agreement with the hospital by which the automobile was out of the charge of the company and the hospital was responsible for the negligence of the driver is absurd upon its face. He swore to nothing of the kind when he was first upon the stand. This evidence was apparently an afterthought, compelled by the necessities of the case. Concededly the defendant was notified in writing that the ambulance must not proceed at a greater pace than twenty-five miles per hour. The evidence of the driver that the orderly sent by the hospital to show him the place directed his course of speed and his manner of turning out to escape an approaching vehicle is incredible. If the defendant's president swore falsely in its behalf, he would willingly procure such evidence from an employee, if possible. In my judgment there is no foundation in law or in the evidence for the verdict against the hospital.

It was error to exclude evidence tending to show what

instructions had been given by the hospital to the orderly with reference to the ambulance. Exception was well taken to the charge that if the speed of the ambulance was the cause of the accident, and the orderly participated by direction, or inference or suggestion, in it, or in the cutting around at Robin street, his act of negligence is chargeable to the hospital.

I favor a reversal and a dismissal of the complaint as to the hospital.

WOODWARD, J., concurs.

Judgment and order affirmed, with costs.