**STILL, et al. v. UNION CIRCULATION CO., Inc.**

No. 76.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1939.

Arthur L. Obre, of New York City, (Robert R. Bauman, of New York City, of counsel), for appellants.

Christensen & Eberlein, of New York City (I. Maurice Wormser, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment entered on a directed verdict, dismissing a complaint in an action for personal injuries suffered through the negligent driving of a motor car. The plaintiffs were passengers, and the driver's negligence may be assumed for the purposes of discussion; the only issue is whether he was the defendant's servant. The judge reserved decision upon the defendant's motion for a directed verdict, but, after the jury had brought in a verdict for the plaintiffs, granted it and entered judgment accordingly. Obviously, every intendment must be taken in the plaintiffs' favor. The important evidence was as follows. The defendant's predecessor, one Davlin, in August, 1935, was engaged in the business of drumming up subscriptions for magazines. In part he farmed out this work to others, including one, Whitaker, with whom he had a written contract, the substance of which was

as follows. It first recited that Davlin was unable to "cover all the States and all other places where magazine subscriptions may be sold", and that Whitaker had said that he was "prepared properly to perform the business of obtaining subscriptions" for him. Davlin therefore agreed to furnish Whitaker with subscription · cards at a price, but not to be responsible to "anyone employed or connected" with him for any part of his pay; nor should Davlin "incur (sic) any expenses necessarily expended" by Whitaker in getting subscriptions. Whitaker should have "exclusive choice, selection, supervision, direction, control and management" of his own employees, except that Davlin might refuse anyone whom he thought unsuitable. Whitaker was to "reimburse" Davlin for any "damage sustained" through any of his employees, and was to be paid out "of the monies received * * * direct from subscribers or from" Whitaker "in payment of subscriptions" procured on the cards issued to him. "The monies so paid * * shall be used by" Whitaker "to defray the cost of transportation of his crews from place to place, and for the purchase and upkeep of automobiles to be used in the performance of this agreement." Davlin was also to allow Whitaker up to $40 a month to defray advertising costs and was to account to him yearly.

Whitaker performed this contract by engaging two or more crews of young women under the direction of managers—also women—to whom various territories were assigned. They were carried from place to place in motor cars, and concededly Davlin had nothing to do with their selection, management, or control; Whitaker paid them and in accordance with the contract furnished the cars, one of which he drove himself. Another—that in which the plaintiffs were riding when injured—was driven by one, Toater, whose negligence caused the accident. Davlin had not been content to leave the crews to Whitaker's instruction alone; he wished to have a representative of his own who should go about with the crew, instruct them in the evenings how best to get subscriptions, and keep them stimulated to the top of their powers. He employed Toater for this purpose, and the case depends upon whether by reason of that employment Toater was his servant when he drove Whitaker's car. Davlin's headquarters were in New York City where a woman named Teitel represented him in his communications with Whitaker about Toater. A jury might have found that Whitaker asked Teitel that in selecting a stimulator for his crew she should choose a man competent to drive the car, and that she had agreed to do so. Davlin paid a salary to Toater, though he required him to find his own carriage; Whitaker paid him nothing, but gave him a place in the crew car on condition that he should drive it. As to routes, Whitaker gave him no more definite directions than that the crew should cover certain territory, and that it should meet Whitaker at such and such a place after the designated area had been exhausted.

Davlin was certainly Toater's "general employer" in the sense in which that term is used in this part of the law, and Davlin was therefore prima facie responsible; it rested upon him to show that as to the particular work in question—driving Whitaker's crew about—Toater had been lent, and was performing only Whitaker's work, or that he was not Davlin's "servant" as distinct from his "agent". That question is to be determined by the law of New York, because the scope of an agent's authority depends upon the law of the place where the authority is conferred. King v. Sarria, 69 N.Y. 24, 25 Am.Rep. 128; Weissman v. Banque De Bruxelles, 254 N. Y. 488, 173 N.E. 835; Restatement of Conflict of Laws, § 343. So far as we can see, the result in New York in vehicle cases appears to depend very largely upon ownership of the vehicle, though the law is not very clear. Certainly when the owner of a vehicle lets it out with a driver and horse to one, who wishes either to drive about for pleasure (McNamara v. Leipzig, 227 N.Y. 291, 125 N.E. 244, 8 A. L.R. 480), or to use it for business (Braxton v. Mendelson, 233 N.Y. 122, 135 N.E. 198; Charles v. Barrett, 233 N.Y. 127, 135 N.E. 199) the owner remains liable; he is treated as an "independent contractor", doing a job for the hirer over which the hirer has no direct control, though he of course selects the errands on which the vehicle is to go. In Kellogg v. Church Charity Foundation, 203 N.Y. 191, 96 N. E. 406, 38 L.R.A.,N.S., 481, Ann.Cas.1913A, 883, the defendant, a hospital, owned the ambulance which did the damage, and another person furnished the horse and the driver, who went wherever the hospital told him to. In spite of its ownership of

the ambulance the hospital was exonerated, though in New York hospitals are liable for such torts. Yet in Hartell v. T. H. Simonson, 218 N.Y. 345, 113 N.E. 255, where the defendant owned the truck which did the damage and another person had supplied the horse and driver, the owner was held. In spite of the statement in the opinion that the situation was distinguishable from that in Kellogg v. Church Charity Foundation, supra, 203 N.Y. 191, 96 N.E. 406, 38 L.R.A.,N.S., 481, Ann.Cas.1913A, 883, we have been unable to discover in what that distinction lay, and, if forced to choose, we should feel obliged to follow the later decision. In Schnedes v. Deffaa, 214 N.Y. 675, 108 N.E. 1107; the defendant had agreed to furnish coaches with horses and drivers for a funeral. Running short himself, he hired an equipage from another liveryman, and thus supplied his shortage. He was held liable, and if the coach, horses and driver had been his, he clearly should have been; but it is not so plain why it made no difference that as between him, as hirer, and the actual owner of the coach as "independent contractor", he was exempt. Whatever may be the proper doctrine to be drawn from these decisions, it does not seem to us to touch the situation here: in all of them the driver was performing only what his "general employer" had agreed to perform, and nothing for the hirer which the hirer had undertaken at his own expense. In the case at bar Whitaker had expressly assumed the transportation of the crew and payment for it; he was an "independent contractor" under the most limited definition; the performance of his contract expressly included Toater's work, and he had entire control of the way in which Toater did it. Toater was clearly a "lent" servant, and Whitaker alone was liable for his acts.

In what we have said we have assumed that if Toater had been driving his own car, Davlin would have been liable; but even that is not altogether certain. There are some situations at least, in which an employer is not liable for faults in the physical conduct of his agent's duties, unless the agent be his "servant", and by "servant" we mean one over whose conduct the principal retains immediate control. Khoury v. Edison E. I. Co., 265 Mass. 236, 164 N.E. 77, 60 A.L.R. 1159; Auer v. Sinclair Refining Co., 103 N.J.L. 372, 137 A. 555, 54 A.L.R. 623; Restatement of Agency, § 220 (1) Comment (c). And this is true though the agent is clearly not an "independent contractor". Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440, is indeed not in accord on the facts, though the court stated the doctrine as we have just done, and later decisions have adopted it in that form. Possibly the result would be different to-day, but we do not see that we need do more here than guard against the inference that we are deciding that Toater could have been Davlin's "servant" on any theory. It is enough that he was not even Davlin's agent in driving Whitaker's car, though of course Davlin had an interest in the movement of the crew and in Toater's following them about. The employer of the most independent of "independent contractors" has an interest in the prosecution of the work, but it is not the kind of interest intended in Charles v. Barrett, supra, 233 N.Y. 127, 129, 135 N.E. 199, 200, by the phrase, "furthering the business of the general employer". "Business" means that part of the enterprise whose conduct the "general employer" has reserved to himself. The situation here falls very clearly within the much quoted passage from Standard Oil Company v. Anderson, 212 U.S. 215, 221, 29 S. Ct. 252, 53 L.Ed. 480; "If that other"— the "general employer"—"furnishes him" —the "special employer"—"with men to do the work and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished". There are indeed times when it is hard to say when men so furnished are under the "exclusive control" of the "special employer"; for instance, in Hartford A. & I. Co. v. Addison, 5 Cir., 93 F.2d 627, the "general employer" retained control apparently only because Addison, the lent employee, remained under the immediate orders of Walker, the foreman or subforeman. But that is quite aside from anything at issue here.

Judgment affirmed.