WILLIAM L. SIMMONS ET AL., PLAINTIFFS-RESPONDENTS, v. WILEY METHODIST EPISCOPAL CHURCH, A CORPORATION, ET AL., DEFENDANTS-APPELLANTS.

Submitted October 28, 1933—Decided January 12, 1934.

For the appellant Wiley Methodist Episcopal Church, *T. Harry Rowland* and *Garfield Pancoast*.

For the respondents, *Riggins & Davis*.

The opinion of the court was delivered by

TRENCHARD, J. This is the appeal of the Wiley Methodist Episcopal Church (hereinafter called the defendant), one of the defendants below, from a judgment entered upon the verdict of a jury in favor of the plaintiffs, in an action brought to recover for injuries sustained in a collision on a public highway between the automobile in which the plaintiffs were riding and an automobile truck owned by the defendant corporation and driven, as was alleged, by its servant.

The grounds of appeal challenge only the legal propriety of the refusal of the trial judge to direct a verdict for the defendant.

We think that such refusal was proper.

First, it is said that a verdict should have been directed for the defendant church because it is a charitable institution and, therefore, not liable for the torts of its agents or servants.

It is to be noted that contributory negligence is not urged as a reason for a directed verdict.

The question thus raised, it will be seen, is whether a charitable institution is liable in damages for injuries received by a person on a public highway through the negligent operation of the charitable institution's automobile truck by its servant and driver, such injured person being a stranger having no beneficial relation to the institution, and not being guilty of contributory negligence. We think that it is.

This precise point has never been definitely decided by any appellate court in this State. It is also apparent that in other jurisdictions there are divergent views, one the so-called Massachusetts or Pennsylvania rule, and the other the so-called New York rule. The trial judge followed the New York rule, and we think rightly, and in accordance therewith declined to direct a verdict for the defendant.

In *D'Amato* v. *Orange Memorial Hospital,* 101 *N. J. L.* 61; 127 *Atl. Rep.* 340, this court decided that because the defendant in that case was a charitable institution it could not be held liable for the negligence of its servants and agents *to a plaintiff, who was a patient* in the defendant hospital. The court there said: "In our opinion, public policy requires

that a charitable institution maintaining a hospital be held not liable for injuries *resulting to patients through the negligence or carelessness of its physicians and nurses,* even if the injured person were a pay patient—payment for board, medical services and nursing in such case going to the general fund to maintain the charity."

In *Boeckel* v. *The Orange Memorial Hospital,* 108 *N. J. L.* 453; 158 *Atl. Rep.* 832, our Supreme Court held that the exemption of the hospital from liability, stated in the D'Amato case, *extends to the case of a mother,* visiting her daughter (a patient at the hospital), who fell on the stairs while leaving the building. The court said: "To the extent that her need went—that need being a mother's wish to be with her sick child and to speed the latter's recovery by the inspiration of a home presence—she was a recipient of the same benevolence, a beneficiary of the same charitable foundation, as was the patient. * * * The opportunity afforded for her attendance was part of the charitable service the defendant was rendering to suffering humanity. In a very real sense the charitable impulses which served the patient also served the patient's mother, indeed served all those who, by whatever bond of attachment, suffered through the infirmity of the patient or were eased by the lightening of her pain."

In the instant case the plaintiffs, complete strangers to the charitable institution, were riding in an automobile, on the public highway, with which defendant's truck collided. So here, we have presented the question whether the exemption of a charitable institution from liability for negligence extends to a case of a complete stranger having no beneficial relation to the defendant charity at the time of the injury.

Now, the logic of our cited cases results in sustaining the action of the trial judge.

It will be seen that in the D'Amato case the exemption was confined to a case of a patient. That case cites and quotes from "perhaps the leading case" of *Schloendorff* v. *The Society of New York Hospital,* 211 *N. Y.* 125. That cited case, while approving exemption in the case of a patient, says that it is "a settled rule that a hospital is liable to strangers, *i. e.,*

to persons other than patients, for the torts of its employes committed within the line of their employment," citing in support thereof *Kellogg* v. *Church Charity Foundation*, 203 *N. Y.* 191; *Hordern* v. *Salvation Army*, 199 *Id.* 233. This decision is quoted in the opinion in the Bockel case, and therein reference is also made to the Massachusetts rule to the contrary. It is therefore apparent that the D'Amato and Boeckel decisions, while not in terms adopting the New York rule as to strangers (having no occasion to decide the point), nevertheless left the question open.

It will also be seen that in the Boeckel case the court stressed the relationship of the plaintiff (a mother visiting her daughter patient) to the hospital as that of a beneficiary receiving the same general class of advantage as the patient herself, bringing the visitor also within the class of direct recipients of the charity's beneficence, an acceptor of its benefactions, and thus equally subject to the same risks of negligence as a patient would be under the law, grounded on public policy, and with painstaking clarity disassociated the plaintiff in that case from the status of a complete stranger to the hospital's charity.

Now, it is quite within reason to declare that public policy forbids a charitable institution being held constantly to the danger of damages for untoward results in some of the continuous ministrations to the direct beneficiaries of its charitable contributions; but such a rule is not invoked with equal justice, nor indeed by virtue of any public requirement, in the case of tortious injuries to those outside of its benefits, neither seeking nor receiving the same. It may well be sound public policy to avoid a diversion of trust funds from the direct object of their charitable donor by forbidding their application to damages for the negligence of the charity's servants where the injured party participates in the charity's bounty, but no charitable organization, no matter how lofty in character the motive or purpose, should be permitted with impunity to set up and operate machinery and thereby injure by negligence those unconcerned in and unrelated to that which the donor brought into being or supports in operation.

To hold otherwise would be to acquiesce in the careless selection of servants, and in the carelessness of those selected, in the operation of automobile trucks on the public highway to the injury of entire strangers to the charity, a proposition repugnant to one's sense of justice.

But the defendant contended below, and now contends, that a verdict should have been directed in its favor "on the ground that at the time of the accident, the driver of the property of the church was not acting as agent or servant of the church, and certainly not within the scope of his agency or employment."

We think not. It was proved, and indeed admitted, that defendant was the owner of the automobile truck which inflicted the injury. Now defendant's ownership of an automobile driven on a public highway, as here, raises a presumption of fact that such automobile was in the possession of the defendant, if not personally, then through its servant the driver, and that such driver was acting within the scope of his employment. *Tischler* v. *Steinholtz*, 99 *N. J. L.* 149; 122 *Atl. Rep.* 880. Of course both or either of these presumptions may be overcome by uncontradicted proof to the contrary. But here there was not such uncontradicted proof. True a witness called by the defendant testified in effect that he was the duly authorized representative of the defendant church, and that he and another were the only persons authorized to grant permission to drive the truck, and that neither granted permission to the driver to use the truck to bring persons back from a picnic ground, on which trip the accident in question occurred. But that testimony was contradicted by other evidence to the effect that the driver of the truck was expressly permitted and instructed by defendant's representative to use the truck for the purpose for which it was used at the time of the accident. Since on a motion to direct a verdict for the defendant the court is not concerned with the credibility of witnesses, nor with the weight of the evidence, but must take as true all evidence which sustains the plaintiffs' view (*Miller* v. *Public Service Co-ordinated Transport*, 111 *Id.* 339), it follows that the motion was properly denied.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, BODINE, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, DEAR, DILL, JJ. 11.

*For reversal*—LLOYD, CASE, DONGES, KAYS, WELLS, JJ. 5.