294 N.J. Super. 635 (1996)
684 A.2d 100
THOMAS DAVENPORT, PLAINTIFF-APPELLANT,
v.
BOROUGH OF CLOSTER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1996.
Decided November 8, 1996.
*637 Before Judges SHEBELL, PAUL G. LEVY and BRAITHWAITE.
Stephen E. Milazzo argued the cause for appellant.
Thomas B. Hanrahan argued the cause for respondent (Harwood Lloyd, attorney; Mr. Hanrahan, of counsel, and on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiff, Thomas Davenport, appeals from a summary judgment dismissing his complaint. The complaint against defendant, Borough of Closter, alleged that as a result of its negligence, plaintiff fell on Borough property and sustained serious injuries. Therefore, this appeal deals with the Tort Claims Act (TCA or Act), N.J.S.A. 59:1-1 to 12-3. Under the Act, immunity is the norm, unless liability is provided for by the Act. Rochinsky v. New Jersey Dep't of Transp., 110 N.J. 399, 407, 541 A.2d 1029 (1988). The Legislature specifically stated that "`the [court's] approach should be whether an immunity applies and if not, should liability attach.'" Id. at 408, 541 A.2d 1029 (quoting N.J.S.A. 59:2-1 Task Force Comment). Plaintiff seeks to impose liability under N.J.S.A. 59:4-2.
On February 1, 1994, plaintiff fell on accumulated snow and ice when walking across Borough property. He was rendered unconscious, experienced convulsions and cardiac arrest and went into a comatose state. He was hospitalized until February 22, 1994, and missed many months from work and incurred substantial medical expenses as a result of the fall. According to plaintiff, he was *638 crossing a vacant lot owned by the Borough adjacent to Borough Hall in an attempt to get to a store located in a nearby strip mall, as he could not reach the store via the sidewalk or the street due to the accumulation of snow and ice on them. He said there was a "well-worn path" by which he and other pedestrians were crossing the lot. He alleged that the lot was also in a dangerous condition due to the accumulation of snow and ice, causing him to fall.
Plaintiff maintains that the dangerous conditions of the sidewalk and street were created by the Borough's negligent snow removal activity, and that a field inlet on the lot was covered by snow placed there by Borough employees. The blocked inlet thereby prevented the drainage of surface water, leaving the lot covered with fallen snow and ice. He claims the Borough had either actual or constructive notice of these dangerous conditions, was aware of the use of the lot as a crossway, and failed to either remedy the dangerous condition or post warnings.
Therefore, appellant argues that he has stated a cause of action under N.J.S.A. 59:4-2, which states:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
The essence of the Law Division judge's decision granting summary judgment was that, no matter which factual scenario was considered, immunity would operate so as to discharge the Borough from liability. Plaintiff argues that the judge erred in finding that the Borough would be immune from suit, and also *639 that the case was not "ripe" for summary judgment because discovery was not completed.
The burden of proof for establishing immunity rests with the public entity. Bligen v. Jersey City Housing Authority, 131 N.J. 124, 128, 619 A.2d 575 (1993)(citing Manna v. State, 129 N.J. 341, 351, 609 A.2d 757 (1992)). In deciding if a public entity is immune, we must "identify the culpable cause of the accident and ... ask if that `identified cause or condition is one that the Legislature intended to immunize.'" Levin v. County of Salem, 133 N.J. 35, 43, 626 A.2d 1091 (1993) (quoting Weiss v. New Jersey Transit, 128 N.J. 376, 380, 608 A.2d 254 (1992)). Since this is an appeal from the grant of summary judgment to defendant, we must "accept as true plaintiff's version of the facts ... [and] giv[e him] the benefit of all inferences favorable to [the] claim." Pico v. State, 116 N.J. 55, 57, 560 A.2d 1193 (1989) (citations omitted).
After enactment of the TCA, the argument was made that common law snow removal immunity, see Miehl v. Darpino, 53 N.J. 49, 247 A.2d 878 (1968), had been abrogated. However, our Supreme Court responded that snow removal immunity continued to exist notwithstanding the Act. Rochinsky, supra, 110 N.J. at 402, 541 A.2d 1029. The Miehl Court noted that if liability were imposed on a public entity for any injuries caused by its snow removal, that it would be required to "broom sweep" the areas from which it removed snow, and that "[t]he high cost of such an undertaking could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program." Miehl, supra, 53 N.J. at 53-54, 247 A.2d 878. Therefore, since "[t]he public is greatly benefited even by snow removal which does not attain the acme of perfection of `broom swept' streets," the Court held that a public entity will not be held liable in tort for injuries arising from its snow removal. Id. at 54, 247 A.2d 878.
Plaintiff maintains, nonetheless, that since in this case the Borough is alleged to have created not one but numerous dangerous *640 conditions, and because it had notice of these dangerous conditions, it is more analogous to Meta v. Township of Cherry Hill, 152 N.J. Super. 228, 377 A.2d 934 (App.Div.), certif. denied, 75 N.J. 587, 384 A.2d 818 (1977), where immunity was not granted, than it is to Rochinsky, supra.
In Rochinsky, plaintiffs claimed that the Department of Transportation ("DOT") was liable for negligent snow removal. Rochinsky, supra, 110 N.J. at 402, 541 A.2d 1029. Plaintiffs' car overturned after hitting what they characterized as a "`snowbank [which] end[ed] the lane of traffic without warning and without regard to traffic circumstances.'" Ibid. After deciding that the common law snow removal immunity established by Miehl was preserved by the TCA, id. at 402, 541 A.2d 1029, the Court held that the immunity barred plaintiffs' claims under N.J.S.A. 59:4-2. Id. at 413-15, 541 A.2d 1029.
The Rochinsky Court did, however, discuss what it termed "the outer limits of the Miehl immunity" in a footnote. Id. at 415 n. 7, 541 A.2d 1029. Referring to the dissent, the Court stated:
We do not disagree in principle that under unique circumstances the immunity for snow removal activities could be construed to permit a cause of action against a public entity for conduct so egregious that its insulation from liability would be inconsistent with the public policy that the Miehl immunity was intended to foster. We are not confronted with allegations of that nature in this case. Rather, the pleadings and interrogatories read most indulgently disclose the allegation that a "snowbank" of indeterminate size and height obstructed [the roadway] due to negligent snow-removal activity. In our view, these allegations do not warrant consideration of the outer limits of the Miehl immunity.
[Ibid.]
The Court went on to say that a cause of action, "unrelated to snow removal activity," might be maintained under N.J.S.A. 59:4-4, if the DOT's conduct amounted to a "palpably unreasonable failure to warn of a dangerous condition." Id. at 415 n. 7, 415-417, 541 A.2d 1029; N.J.S.A. 59:4-4.
In Meta, the plaintiff was involved in a car accident after her car skidded on an ice patch. Meta, supra, 152 N.J. Super. at 230, 377 A.2d 934. The defendant, the Township of Cherry Hill, had been notified several times about the icy condition of the road *641 plaintiff had been traveling. Id. at 231, 233-34, 377 A.2d 934. It was not contended that the icy conditions were a result of negligent snow removal; rather, plaintiff contended that the dangerous condition resulted from water contained on the side of the road. Id. at 231, 377 A.2d 934. We reversed a grant of summary judgment and held that whether the Township was liable under N.J.S.A. 59:4-4 was an issue for the jury. Id. at 232, 234, 377 A.2d 934. The reasoning behind our decision was that the failure to warn motorists of the dangerous condition, after having been notified several times, could reasonably be found by a jury to have been palpably unreasonable under N.J.S.A. 59:4-4, and therefore, summary judgment was improper. Id. at 232-34, 377 A.2d 934.
Here, plaintiff's attempt to avoid the application of immunity by alleging that there were "multiple unreasonably dangerous conditions" is unavailing as they are all alleged to have been caused by the Borough's snow removal activities, which are immune from suit. Rochinsky, supra, 110 N.J. at 413, 541 A.2d 1029. In addition, rendering the sidewalks impassible and covering a field inlet in a vacant lot, thereby impeding drainage from the lot, are not conditions that would require this court to consider the "outer limits of the Miehl immunity," as they cannot be viewed as extending beyond ordinary negligence related to snow removal. See id. at 415 n. 7, 541 A.2d 1029. Indeed, our Supreme Court declined to consider the "outer limits of the Miehl immunity" in Rochinsky, where it was alleged that the public entity created a snow bank in the middle of a highway, blocking a lane of traffic. Id. at 415 n. 7, 541 A.2d 1029. The conditions described by plaintiff are simply the kind anticipated by the Miehl Court in applying snow removal immunity. "The unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time." Miehl, supra, 53 N.J. at 54, 247 A.2d 878. Further, in view of the continued viability of common law immunity, we need not consider the breadth of coverage for weather immunity provided by *642 N.J.S.A. 59:4-7. Rochinsky, supra, 110 N.J. at 414, 541 A.2d 1029.
Plaintiff also cites Bligen, supra, in which the Supreme Court declined to extend common law snow removal immunity to a Housing Authority. Bligen, supra, 131 N.J. at 126, 619 A.2d 575. That holding is clearly inapplicable here. There, the Court reasoned that the "policy reasons behind the common-law immunity for public entities for snow-removal activities do not apply to a public housing authority, which has a finite area from which to remove the snow." Id. at 131, 619 A.2d 575. The Court further distinguished Bligen from previous snow removal immunity cases, when it stated that the law was well established regarding the tort liability of municipal landlords, i.e., that they have "a duty to maintain the premises to prevent foreseeable injuries." Id. at 134, 619 A.2d 575 (citation omitted). This was an additional reason not to provide the Housing Authority with immunity for its snow removal activities. Id. at 134, 136, 619 A.2d 575.
In the present case, snow removal immunity protects the Borough from liability. As a matter of law, it is clear that the Borough's snow removal activities were not so egregious as to require this court to consider the "outer limits of the Miehl immunity." This conclusion is warranted even accepting as true the facts presented by plaintiff and giving him the benefit of all reasonable favorable inferences. We conclude that the snow removal immunity, as expressed in Miehl and preserved in Rochinsky, applies to shield the Borough from liability and summary judgment was properly granted. See also Amelchenko v. Borough of Freehold, 42 N.J. 541, 201 A.2d 726 (1964).
Plaintiff also argues that summary judgment was not properly granted because discovery was not complete as he had not received answers to interrogatories from defendant, nor were depositions taken of Borough employees. Under Rule 4:46-2, a court shall decide a summary judgment motion based on "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits...." R. 4:46-2(c). The *643 Comment to this rule explicitly states that "the trial court should not grant ... summary judgment ... when the matter is not yet `ripe' for such consideration such as where discovery has not yet been completed." Pressler, Current N.J. Court Rules, comment on R. 4:46-2 (1996). In a case that is ripe for summary judgment, if "there is no genuine issue as to any material fact challenged ... the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).
Here, it is clear that snow removal immunity applies to bar plaintiff's claim. We are not persuaded that further discovery as to the Borough's actions or inactions has the capacity to change the picture since "any immunity provisions provided in the act or by common law will prevail over the liability provisions." Rochinsky, supra, 110 N.J. at 408, 541 A.2d 1029 (quoting N.J.S.A. 59:2-1 Task Force Comment). Under Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995), if the issues challenged by the party opposing summary judgment are insubstantial, "the proper disposition is summary judgment." Id. at 529, 666 A.2d 146 (citation omitted).
We, therefore, affirm the order granting summary judgment.