705 A.2d 1241

TANISHA SYKES, PLAINTIFF–RESPONDENT, v. RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1998—Decided February 23, 1998.

Before Judges LONG, KLEINER and KIMMELMAN.

*George H. Parsells, III*, argued the cause for appellant (*Connell, Foley & Geiser*, attorneys; *George J. Kenny*, of counsel; *Mr. Parsells*, on the brief).

*Lawrence H. Madnick*, argued the cause for respondent (*Thomas A. McCarter*, attorney; *Mr. Madnick*, on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

In 1994, plaintiff Tanisha Sykes ("Sykes") was a student at Rutgers, The State University of New Jersey ("Rutgers"). Sykes lived in a dormitory apartment on Rutgers' Busch Campus in New Brunswick. On the morning of February 3, 1994, at approximately 11:00 a.m., Sykes went out to Parking Lot # 58 to start her car. When her car would not start, she headed back to her dormitory. On the way, she slipped and fell on an "accumulation of ice" in the parking lot and was injured.

On September 21, 1995, Sykes filed a complaint against Rutgers alleging that her "fall, and resulting bodily injuries" were caused by its "negligence and carelessness." Specifically, she charged that Rutgers "failed to protect against the [icy] condition by failing

to properly inspect, repair, supervise, control and remedy or warn of the same."

On May 19, 1997, Rutgers filed a motion for summary judgment contending that, as a public entity, it is shielded from liability by common law snow-removal immunity and the weather-immunity provision of the New Jersey Tort Claims Act, *N.J.S.A.* 59:4-7.

In opposition, Sykes contended that the "immunities claimed by Rutgers are not absolute." Relying on *Bligen v. Jersey City Housing Authority*, 131 *N.J.* 124, 619 *A.2d* 575 (1993), Sykes urged that statutory weather-immunity provided by *N.J.S.A.* 59:4-7 does not apply when, as in her case, an accident occurs in a parking lot and not on a "street" or "highway" and that the policy reasons behind common law snow-removal immunity do not apply to the Busch campus parking lot because it constitutes only a "finite, bounded area" from which to remove snow.

Following oral argument, the trial judge entered an order denying Rutgers' motion for summary judgment finding the case "almost indistinguishable" from *Bligen*. By our leave, Rutgers appeals contending that the trial judge erred in failing to recognize its immune status.

There are two possible roads to snow-removal immunity; one is the Tort Claims Act and the other is the common law. The relevant provision of the Tort Claims Act is *N.J.S.A.* 59:4-7 which provides:

> Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions.

The Supreme Court in *Bligen* denied Tort Claims Act coverage to the Jersey City Housing Authority for a fall on an icy parking lot because the internal driveways and parking areas of a public housing complex are not "streets" or "highways" as contemplated by the Act.

Sykes asks us to analogize the Busch Campus parking lot to the facts in *Bligen* in order to conclude that Tort Claims Act

immunity is unavailable. However, the Court in *Bligen* specifically declined to enunciate a rule broader than the facts before it:

> The precise scope of the statutory terminology is not before us. Our conclusion that the internal driveway servicing defendant's apartment complex is not a "street" or "highway" does not resolve whether other roadways servicing public facilities are the essential equivalent of public streets covered by the immunity.
> [131 *N.J.* at 130, 619 *A.*2d 575.]

We need not grapple with this issue because we have concluded that regardless of Rutgers' entitlement to Tort Claims Act immunity, it is clearly entitled to the common law immunity established in *Miehl v. Darpino*, 53 *N.J.* 49, 247 *A.*2d 878 (1968). That immunity was not invalidated by the Tort Claims Act. *Rochinsky v. State of New Jersey Department of Transportation*, 110 *N.J.* 399, 414, 541 *A.*2d 1029 (1988).

We recognize that the Supreme Court in *Bligen* refused to afford common law snow-removal immunity to the defendant housing authority. In so doing, it acknowledged that "the imposition of liability on public entities responsible for the removal of snow on a network of ... roadways could be limitless." *Bligen, supra*, 131 *N.J.* at 133, 619 *A.*2d 575. However, the Court opined that the driveways and parking lots in a public housing authority, which is "a finite area from which to remove the snow do not present that problem." *Id.* at 131, 619 *A.*2d 575. In addition, the Court distinguished the facts in *Bligen* from the previous snow-removal immunity cases by invoking the well-established rule that municipal landlords "have a duty to maintain the premises to prevent foreseeable injuries." *Id.* at 134, 619 *A.*2d 575 (citations omitted).

Sykes argues that while the total area under Rutgers control may be larger than that of the area controlled by the housing authority in *Bligen*, the "internal parking lot" in which she fell is analogous to *Bligen* because it is a "finite, bounded area" from which to remove snow. We disagree. To us, there is nothing in *Bligen* to suggest that the Supreme Court intended its "finite, bounded area" characterization of the seven-acre housing authority there to allow a slip and fall plaintiff to fractionalize a 1500 acre

college campus. Sykes' argument that the scope and size of Rutgers' Busch Campus can be ignored by focusing only on the part of the campus "dedicated to student housing" would enable slip and fall plaintiffs to effectively dissect any public entity into its constituent "finite, bounded areas" for purposes of avoiding common law snow-removal immunity. This would, in effect, destroy the common law immunity which has protected public entities against liability for their snow-removal activities for over a quarter of a century. *See Miehl v. Darpino, supra.* Indeed, under her reasoning, any municipality which is smaller or similar in size to Rutgers could be subjected to liability with respect to "finite, bounded areas" of hardscape supporting its public buildings.

We also reject Sykes' argument that because she resided in a dormitory on the Busch campus, Rutgers had a legal responsibility to her as a municipal landlord like that imposed on the housing authority in *Bligen.* Classifying Rutgers as a "landlord" in order to come within the *Bligen* rationale ignores its role as a State University which primarily uses its campuses for scholastic activities and not housing. The Busch campus consists of over 1500 acres containing classrooms, administration buildings, athletic areas, and an ecological preserve, all of which is intersected by 139 acres of hardscape surface consisting of parking lots, roads and sidewalks. This is quite distinct from the situation in *Bligen* and apart from her reliance on *Bligen,* Sykes alludes to no authority establishing the creation of such a relationship in these circumstances. In the absence of a clearly established landlord-tenant relationship, our courts have previously rejected attempts by slip and fall plaintiffs to classify a particular public entity as akin to a commercial landlord in order to squeeze within the *Bligen* rationale. *See e.g., Rossi v. Borough of Haddonfield,* 297 *N.J.Super.* 494, 688 *A.*2d 643 (App.Div.), *aff'd* 152 *N.J.* 43, 702 *A.*2d 1285 (1997).

In sum, Rutgers is entitled to common law snow-removal immunity and summary judgment should have been granted. *Brill v.*

*Guardian Life Ins. Co.,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995). Consequently, we reverse the trial court's decision denying summary judgment and remand the matter for the entry of summary judgment in favor of Rutgers based upon the application of common law snow-removal immunity.