762 A.2d 696 (2000)
335 N.J. Super. 427
Brendan O'CONNELL, Plaintiff-Appellant,
v.
STATE of New Jersey, a body politic, and Montclair State University, a university of the State of New Jersey, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2000.
Decided December 11, 2000.
*697 James Koblin, Jersey City, argued the cause for appellant (Horn, Shechtman & Hirsch, attorneys; Ricky E. Bagolie, of counsel; Mr. Koblin, on the brief).
Karen L. Jordan, Deputy Attorney General, argued the cause for respondents (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Valerie L. Egar, Deputy Attorney General, on the brief).
Before Judges HAVEY, CUFF and LEFELT.
The opinion of the court was delivered by HAVEY, P.J.A.D.
The issue raised by this appeal is whether defendant Montclair State University (Montclair State) is entitled to immunity under the Charitable Immunity Act (Act), N.J.S.A. 2A:53A-7 to -11, despite its status as a public entity. We hold that the Act was never intended to cover public entities, when judgments against them are paid by public funds. In so holding, we respectfully disagree with our court's decision in Graber v. Richard Stockton College of New Jersey, 313 N.J.Super. 476, 713 A.2d 503 (App.Div.), certif. denied, 156 N.J. 409, 719 A.2d 641 (1998), which held to the contrary. We reverse and remand for further proceedings.
Plaintiff, while a full-time student at Montclair State, fell down the steps of the University's amphitheater. He claims that the fall was due to a broken and cracked staircase. He sustained several fractured ribs and a fractured elbow and was hospitalized for several days.
Plaintiff filed suit. The Attorney General, on behalf of Montclair State, filed an answer raising affirmative defenses under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3, and that Montclair State was immune under the Act, N.J.S.A. 2A:53A-7. Relying on Graber, supra, 313 N.J.Super. 476, 713 A.2d 503, which held that a state college is afforded immunity under N.J.S.A. 2A:53A-7, the motion judge dismissed the complaint, finding that plaintiff was a "beneficiary" of the works of the University. See N.J.S.A. 2A:53A-7a.[1] Since he concluded that plaintiff's action was barred by the Act, the judge did not reach Montclair State's tort claims defenses.
The principle of charitable immunity was deeply rooted in the common law of New Jersey. The immunity was first declared in D'Amato v. Orange Mem. Hosp., 101 N.J.L. 61, 127 A. 340 (E. & A. 1925), as a judicial expression of our state's public policy that a charitable hospital should not be held liable for injuries to its patients. This is so because "payment for board, medical services, and nursing in such case [goes] to the general fund to maintain the charity." Id. at 65, 127 A. 340. Thus, a primary justification for the immunity was preservation of the charitable fund:
[I]t would be contrary to the interests of society that funds dedicated to a charitable use be permitted to be diverted or *698 diminished by the payment of judgments resulting from the torts of agents, servants or employees of the organization or institution administering the charity where suit is instituted by the beneficiary of the charity.
[Jones v. St. Mary's Roman Catholic Church, 7 N.J. 533, 537, 82 A.2d 187 (1951).]
Accord Simmons v. Wiley Methodist Episcopal Church, 112 N.J.L. 129, 132, 170 A. 237 (E. & A. 1934); Kolb v. Monmouth Mem. Hosp., 116 N.J.L. 118, 119-20, 182 A. 822 (E. & A. 1936); and see Parker v. St. Stephen's Urban Dev. Corp., Inc., 243 N.J.Super. 317, 322, 579 A.2d 360 (App. Div.1990); Rupp v. Brookdale Baptist Church, 242 N.J.Super. 457, 462, 577 A.2d 188 (App.Div.1990).
The Supreme Court abolished the common-law doctrine of charitable immunity in 1958. Collopy v. Newark Eye & Ear Infirmary, 27 N.J. 29, 141 A.2d 276 (1958); Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 141 A.2d 273 (1958); Benton v. Young Men's Christian Ass'n of Westfield, 27 N.J. 67, 141 A.2d 298 (1958). The Legislature responded to these decisions by adopting the Act, N.J.S.A. 2A:53A-7 to -11. N.J.S.A. 2A:53A-7 provides:
a. No nonprofit corporation, society or association organized exclusively for religious, charitable, or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association[.]
The purpose of the Act was to "reinstate[ ] `the common law doctrine as it had been judicially defined by the courts of this State.'" Schultz v. Roman Catholic Archdiocese of Newark, 95 N.J. 530, 533, 472 A.2d 531 (1984) (quoting Wiklund v. Presbyterian Church of Clifton, 90 N.J.Super. 335, 338, 217 A.2d 463 (Cty.Ct.1966)). N.J.S.A. 2A:53A-10 provides that the Act "shall be liberally construed so as to afford immunity ... in furtherance of the public policy for the protection of" charitable organizations. However, the grant of immunity was intentionally limited. DeVries v. Habitat for Humanity, 290 N.J.Super. 479, 484, 676 A.2d 152 (App.Div.1996), aff'd, 147 N.J. 619, 689 A.2d 142 (1997). As we observed in Anasiewicz v. Sacred Heart Church of New Brunswick, 74 N.J.Super. 532, 535, 181 A.2d 787 (App. Div.), certif. denied, 38 N.J. 305, 184 A.2d 419 (1962):
That the Legislature did not intend to expand, modify, or alter in any way the span of the pre-existing immunity seems apparent from the wording of the statute.... Significantly, the verbiage employed [by the Act] closely parallels the language of the cases in which the immunity rule was enunciated.
Judge Lynch, in his dissent in Winters v. Jersey City, 120 N.J.Super. 129, 137-38, 293 A.2d 431 (App.Div.1972) (Lynch, J.A.D., concurring in part and dissenting in part), mod. on dissent, 63 N.J. 7, 304 A.2d 196 (1973), which was adopted by the Supreme Court, observed that the quoted words of the N.J.S.A. 2A:53A-7a "organized exclusively for religious, charitable, or educational purposes" are "taken almost verbatim from cases which relate to private charities only." See Lindroth v. Christ Hosp., 21 N.J. 588, 123 A.2d 10 (1956); Rose v. Raleigh Fitkin-Paul Morgan Mem. Hosp., 136 N.J.L. 553, 57 A.2d 29 (E. & A. 1948); Kolb, supra, 116 N.J.L. 118, 182 A. 822; Simmons, supra, 112 *699 N.J.L. 129, 170 A. 237; Boeckel v. Orange Mem. Hosp., 108 N.J.L. 453, 158 A. 832 (Sup.Ct.1932), aff'd, 110 N.J.L. 509, 166 A. 146 (E. & A. 1933). In rejecting the majority's view that the Act applied to municipally-operated Jersey City Hospital, Judge Lynch concluded:
The words describing those organizations upon which the statute confers either total or limited immunity ("nonprofit corporation," etc.) have developed an established connotation in our law, i.e., a private charity which depends on charitable contributions and whose funds are held in trust solely for the purpose of the charity. The statutory language is derived from the cases which conferred immunity upon private charities at common law. A municipality is not such a corporation, society or association. It is organized under, and has the powers and duties provided for, in N.J.S.A. 40:42-1 et seq.
[Winters, supra, 120 N.J.Super. at 138, 293 A.2d 431 (Lynch, J.A.D., concurring in part and dissenting in part) (emphasis added).]
Because Jersey City Medical Center derived its funds from the public, rather than from private bequests, the policy underpinnings to the Act, the preservation of private funds given by benefactors, was inapplicable. Ibid.
In agreeing with the views expressed by Judge Lynch in his dissent, the Supreme Court concluded that the $10,000 limit for recoveries against charitable hospitals, N.J.S.A. 2A:53A-8, was inapplicable to Jersey City Medical Center and modified the judgment accordingly. Winters, supra, 63 N.J. at 8, 304 A.2d 196. See also Tramutola v. Bortone, 63 N.J. 9, 304 A.2d 197 (1973) (modifying a judgment against Bayonne Hospital, concluding that the statutory $10,000 limitation of liability under the Act was not applicable to a claim against a municipal corporation for damages resulting from the improper operation of its hospital).
The legislative history to the Act supports the conclusion that the statutory words were intended to apply only to private charities. State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997) ("[e]xtrinsic aids, such as legislative history, [and] committee reports, ... may be used to help resolve any ambiguity and to ascertain the true intent of the Legislature"). Nowhere in the legislative history is there any suggestion that the Legislature intended to afford charitable immunity to public entities. Indeed, the entire legislative hearing conducted in 1959 on the bill, ultimately codified as the Act, focused on the necessity of preserving the defense of immunity to private institutions.
For example, a representative of hospitals maintained under religious auspices, testified concerning the drastic effect abrogation of the immunity will have on private Catholic hospitals. An insurance casualty underwriter predicted increases in insurance premiums charged to private charitable institutions as a consequence of the abolition of the charitable immunity doctrine. "In all the 159 pages of the hearing, not a single word of testimony referred to the possibility that the proposed bill referred to anything but private charitable hospitals." Winters, supra, 120 N.J.Super. at 142, 293 A.2d 431 (Lynch, J.A.D., concurring in part and dissenting in part). Further, during the Chairman's colloquy with a casualty underwriter, the Chairman made clear that "[w]e are not talking about public schools. We are talking about schools that are operated by religious and charitable organizations." Public Hearing Before Assembly Judiciary Comm. on Assembly Comm. Substitute for Senate Bill No. S-204, 107-08 (July 17, 1958) (emphasis added).
In fact, when the Act was passed in 1959, the State of New Jersey already enjoyed sovereign immunity in the area of tort liability. It was not until 1970, that the immunity was abrogated by the Court in Willis v. Department of Conservation & Economic Development, 55 N.J. 534, 264 *700 A.2d 34 (1970). Prior to and after the abrogation of the sovereign immunity doctrine, there evolved a statutory hodgepodge of waivers of the immunity for local governments and some state agencies. See Report of the Attorney General's Task Force on Sovereign Immunity, 31-34 (May, 1972) (the Kugler Report). However, because of the extant general rule of sovereign immunity favoring the State in 1959, we doubt the Legislature intended that public institutions, created by the State for educational purposes, be given charitable immunity under the Act as well.
All parties agree that Montclair State is a "public entity," whose liabilities are subject to the provisions of the TCA. There is also no question that it is a nonprofit corporation and, governed by the provisions of N.J.S.A. 18A:64-1 to -84 and N.J.S.A. 18A:3B-1 to -36, is created exclusively for educational purposes. There is also no doubt that, by the passage of the Higher Education Restructuring Act of 1994, L. 1994, c. 48 (N.J.S.A. 18A:3B-1 to -36), institutions of higher education were given greater autonomy over such functions as the development of institutional plans, supervision of their institutions, the setting of tuition and fees, and the establishment of admission standards. However, Montclair's income is derived from State funds, tuition, and, to an undetermined amount, charitable gifts. The Legislature appropriates the necessary funds to State institutions, payable monthly, N.J.S.A. 18A:64-18.1. The institutions are responsible to control expenditures of the appropriated funds "in accordance with the provisions of the State budget and appropriation acts of the Legislature," and for reporting the receipt of funds and expenditures to the State Department of the Treasury. N.J.S.A. 18A:64-6f.
Moreover, pursuant to N.J.S.A. 18A:3B-6h, Montclair has opted to be represented by the Attorney General. Thus, it is entitled to indemnification for any tort-claim settlements or judgments against it from the fund created by the TCA pursuant to N.J.S.A. 59:12-1. See N.J.S.A. 18A:3B-6h. Consequently, any judgment against it arising out of a personal injury claim will be paid from a public trust fund created by public tax dollars. Thus, we are not presented here with the diversion or diminishment of private charitable funds.
Nevertheless, in Graber, supra, 313 N.J.Super. at 485, 713 A.2d 503, the court held that Stockton State College was entitled to immunity under the Act despite its status as a public entity. This was so, the court reasoned, because Stockton State College met the definitional requirement of a charity: it was "a nonprofit institution organized exclusively for educational purposes[.]" Id. at 486, 713 A.2d 503. We respectfully disagree.
The fact that the entity is a nonprofit institution created exclusively for educational purposes is not dispositive. After Graber was decided, we concluded in Hamel v. State, 321 N.J.Super. 67, 728 A.2d 264 (App.Div.1999), that a local school board, a public entity, was not entitled to protection under the Act despite the fact that it was a nonprofit organization and created exclusively for educational purposes, because it relied primarily on tax dollars and governmental subsidies, rather than charitable contributions. Id. at 76-77, 728 A.2d 264; see also Winters, supra, 120 N.J.Super. at 140, 293 A.2d 431 (Lynch, J.A.D., concurring in part and dissenting in part) (rejecting the notion that boards of education are afforded immunity under the Act, observing that "[s]uch is not the law and, indeed, so far as I know, the contention has never been made"). The threshold question must be whether the Legislature ever envisioned public entities, such as state colleges, as being within the protective reach of the Act. Because the Legislature "did not intend to expand, modify, or alter in any way the span of the pre-existing immunity," we conclude that it did not. Anasiewicz, supra, 74 N.J.Super. at 535, 181 A.2d 787. The policy underpinnings to charitable immunity at common law have no application to a public *701 entity, whose liability judgments are paid by public funds.
Our conclusion is fortified by the fact that, in every reported case we have found prior to Graber, State institutions of higher learning have only asserted defenses under the TCA, despite the fact that the injured plaintiff may have been a "beneficiary" under the Act. See e.g., Lowe v. Zarghami, 158 N.J. 606, 731 A.2d 14 (1999) (application of the late notice requirements under N.J.S.A. 58:8-8 in a malpractice action by patient against the University of Medicine and Dentistry of New Jersey (UMDNJ)); Mittra v. University of Medicine & Dentistry, 316 N.J.Super. 83, 719 A.2d 693 (App.Div.1998) (former student's action against UMDNJ dismissed for failure to give adequate notice of tort claim as required by the TCA); Setrin v. Glassboro State College, 136 N.J.Super. 329, 346 A.2d 102 (App.Div. 1975) (student stabbed during racial unrest on campus did not sustain injury as a result of a "dangerous condition" under N.J.S.A. 59:4-2). In none of these cases did the Attorney General raise the Act as a defense, suggesting a tacit acknowledgment that the only defenses available were under the TCA.
There is a sound policy reason for reaching such a conclusion. Unlike the Charitable Immunity Act, the TCA is not concerned with preventing the diminution of private trust funds. Its focus is on the protection of the public fisc, and the development of all-inclusive rules of the game so that public entities have a measure of predictability as to costs and liability. See Kugler Report, supra, comment to N.J.S.A. 59:2-1. The TCA defines "public entity" broadly in order to "provide a basis upon which an established body of law may be uniformly applied." Kugler Report, supra, comment on N.J.S.A. 59:1-3. Consequently, the TCA adopted the fundamental rule that public entities are absolved from tort liability except under conditions and circumstances provided by the Act. Thus, even when a provision of the TCA establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity. Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 408, 541 A.2d 1029 (1988). Also, the TCA sets forth conditions to liability. For example, it: (1) imposes strict notice requirements, N.J.S.A. 59:8-8; (2) requires proof that the public entity's conduct was palpably unreasonable, see e.g., N.J.S.A. 59:4-2; and (3) limits recovery for pain and suffering, N.J.S.A. 59:9-2d. Coupling the "beneficiary" defense (N.J.S.A. 2A:53A-7) and the limit to recovery (N.J.S.A. 2A:53A-8) under the Act with the immunities and conditions of liability imposed by the TCA may present an insurmountable burden for an injured litigant to overcome, and provides the public entity with an imbalanced array of defenses merely because it may be, for example, a nonprofit entity created exclusively for educational purposes.
Moreover, the Kugler Report and the provisions of the TCA itself disclose no reference to the Act. In our view, this is so because, in enacting the TCA, the Legislature did not envision that the TCA's resurrection of immunity and limitations on liability would supplement the defenses and limits imposed by the Act. Indeed, if this were so, the TCA would be in direct conflict with the Act insofar as the former provides unlimited liability, and the latter, if it were to apply to public entity hospitals, limits recovery to $250,000. See N.J.S.A. 2A:53A-8.
We recognize that the defenses provided to a public entity under the TCA are not exclusive. N.J.S.A. 59:2-1b permits public entities to raise not only the tort immunities and defenses under the TCA, but also "any defenses that would be available to the public entity if it were a private person." The Graber court relied on this provision in holding that the Act is one such defense, observing that:
Pursuant to this section, courts have applied a wide range of statutory and common law defenses outside the Tort Claims Act to cases brought against *702 public entities. See e.g., Sykes v. Rutgers, 308 N.J.Super. 265, 269-70, 705 A.2d 1241 (App.Div.1998) and Davenport v. Borough of Closter, 294 N.J.Super. 635, 639-42, 684 A.2d 100 (App. Div.1996) (applying common law snow-removal immunity); Del Tufo v. Township of Old Bridge, 278 N.J.Super. 312, 319-323, 650 A.2d 1044 (App.Div.1995), aff'd, 147 N.J. 90, 685 A.2d 1267 (1996) (applying defense of contributory/comparative negligence); Benjamin v. Corcoran, 268 N.J.Super. 517, 634 A.2d 108 (App.Div.1993) (applying immunity under Landowners Liability Act, N.J.S.A. 2A:42A-1 et seq.). In this case, the immunity afforded under N.J.S.A. 2A:53A-7 is available to Stockton as a nonprofit institution organized exclusively for educational purposes, even though it is also a public nonprofit college. See also Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090 (1993) (stating that public entities are entitled to immunity both under the Tort Claims Act and as established at common law).
[Graber, supra, 313 N.J.Super. at 486, 713 A.2d 503.]
However, unlike the facts before us, in the cited cases there was no question that the scope of the pre-TCA immunity included public entities. E.g., Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090 (1993) (police officer entitled to common-law immunity from liability arising out of injuries to third party occurring during pursuit of fleeing vehicle); Sykes v. Rutgers, State Univ., 308 N.J.Super. 265, 705 A.2d 1241 (App. Div.1998) (public entity's common-law immunity for snow removal activities survived passage of the TCA); Davenport v. Borough of Closter, 294 N.J.Super. 635, 639, 684 A.2d 100 (App.Div.1996) (same); and see Rochinsky, supra, 110 N.J. at 402, 541 A.2d 1029 (same); Trimblett v. State, 156 N.J.Super. 291, 294, 383 A.2d 1146 (App.Div.1977) (Landowners Liability Act, N.J.S.A. 2A:42A-3, applies to State). In its comment to N.J.S.A. 59:2-1b, the Task Force aptly observed that "[i]t is anticipated that the Courts will realistically interpret both the state and common law immunities in order to effectuate their intended scope." Kugler Report, supra, comment to N.J.S.A. 59:2-1b (emphasis added). As already noted, in view of the policy underpinnings to charitable immunity at common law, we cannot "realistically" interpret the Act as covering public entities.
Reversed and remanded for further proceedings.
NOTES
[1] N.J.S.A. 2A:53A-7a provides absolute immunity to a qualified organization from liability to a "beneficiary, to whatever degree, of the works of such nonprofit corporation, society, or association[]."