**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3725-16T1

KRISTINA MOFFATT and
ANTHONY MOFFATT,

      Plaintiff-Appellant,

v.

PARSIPPANY TROY HILLS
BOARD OF EDUCATION,
INTERVALE ELEMENTARY
SCHOOL, and CHRIS GUARNERI,

      Defendants-Respondents.

_____

> Argued October 1, 2018 – Decided November 16, 2018
>
> Before Judges Fasciale, Gooden Brown and Rose.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2437-14.
>
> K. Raja Bhattacharya argued the cause for appellant (Bendit Weinstock, PA, attorneys; Sherri Davis Fowler and K. Raja Bhattacharya, on the briefs).
>
> Randall S. Bruckman argued the cause for respondents (Gold Albanese Barletti & Locascio, LLC, attorneys; Randall S. Bruckman, on the brief).

PER CURIAM

Plaintiff Kristina Moffatt[1] appeals from the Law Division's March 31, 2017 summary judgment dismissal of her personal injury complaint against defendants Parsippany Troy Hills Board of Education (BOE), Intervale Elementary School (Intervale School), and Chris Guarneri. After reviewing the record and applicable legal principles, we reverse and remand.

We discern the following facts from the motion record, extending to plaintiff all favorable inferences. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On February 12, 2014, while walking from the school building to her car, plaintiff fractured her ankle "when she slipped and fell on ice covering the sidewalk area between the bus drop-off area and [Intervale School's] parking lot." Plaintiff fell "in or adjacent to the area of . . . a cutout in the sidewalk [utilized] for access to the handicap parking spots." At the time of plaintiff's fall, the weather was "sunny, clear and cold . . . [approximately ten degrees Fahrenheit]."

---

[1] In our opinion we refer to Kristina Moffatt as plaintiff, although we recognize Anthony Moffatt, her husband, also has filed a derivative claim for loss of consortium.

Plaintiff did not notice snow or ice when she stepped on the sidewalk. However, ice in the area where plaintiff fell measured approximately four feet long, two feet wide, and four inches thick. Mounds of snow were situated "on the end of the island walkway." Nearly nine inches of snow had fallen a few days earlier. In clearing the snow from the school grounds, BOE employees "[might] have inadvertently dropped snow in the area where [p]laintiff fell."

Plaintiff retained Dr. Wayne Nolte, an engineering expert, to evaluate the accident site and provide an expert opinion concerning liability. In addition to inspecting the site, Dr. Nolte reviewed discovery, relevant weather reports, and the Barrier Free Subcode of New Jersey's Uniform Construction Code. Thereafter, Dr. Nolte issued a written report, concluding:

> 1. The accident site was in a hazardous condition on the day of this accident.
>
> 2. The hazardous condition was the defective sidewalk condition.
>
> 3. [Plaintiff] was not given any warning that the area where she stepped up was defective. The corner of the island sidewalk was missing and had a low elevation which allowed water to accumulate.
>
> 4. Discoloration of the concrete where the section of concrete is missing from the corner of the island sidewalk and where the accident took place, as well as discoloration of the concrete curb immediately across from it where damage also existed, showed uniform

3

discoloration indicating that the condition was not something that had just occurred but had occurred for a long time prior to this accident (years).

5. The defective area where this accident occurred was a handicap accessible passageway required to be firm, stable and slip-resistant. This defective area on the morning of this accident was not firm, stable or slip-resistant.

6. The failure of the [BOE], Intervale School and [head custodian] Christopher Guarneri to observe ice in the defective corner of the sidewalk and handicap accessible passageway was palpably unreasonable. The sidewalk defect and topographic condition provided them an opportunity to see that water was accumulating in this area and under low temperatures would freeze to ice. Their failure to address this condition and especially so in a handicap accessible passageway was palpably unreasonable and the cause of this accident.

At the close of discovery, defendants filed a motion for summary judgment, arguing plaintiff's claims were barred under common law snow removal immunity, and statutory immunity pursuant to the Tort Claims Act (TCA), N.J.S.A. 59:2-3 and N.J.S.A. 59:4-2.[2] Following oral argument on March 31, 2017, the court dismissed plaintiff's complaint, finding common law immunity shielded defendants from liability. The court did not address the factors set forth in N.J.S.A. 59:4-2.

---

[2] Plaintiff filed a cross-motion for partial summary judgment as to liability, only, which was denied. Plaintiff does not appeal from that order.

In its ruling, the court determined there was "no evidence that would permit a rational [j]uror to conclude that the condition of the sidewalk independent of the snow removal activities caused the accident." The court elaborated:

> [Y]es, there was this four-inch sheet of – block of ice that filled the walkway, not something that says that because of this concrete, the defect in the concrete corner, that water melted, went in there and that it . . . never did that . . . without that defect. I just don't have anything there.
>
> . . . .
>
> [O]ther than . . . Dr. Nolte . . . none of the witness[es] testif[ied] that the missing section of concrete resulted in the accumulation of water, snow, or ice either on that particular date or any other occasion, from what I could see when I reviewed the transcript.
>
> . . . .
>
> Although the other witnesses testified about the presence of snow and ice on the sidewalk and in the area of the cutout, none made any mention of the missing concrete or any suggestion that there [was] . . . some history of water accumulating in the area as a result of the missing concrete.

The court concluded, "To the extent Dr. Nolte opine[d] that the condition of the area was dangerous, it was because the snow and ice accumulated in the area." In essence, the court found the accident was a result of defendants' snow

removal efforts, which were protected by common law immunity. In doing so, the court rejected plaintiff's argument that the broken concrete curbing caused accumulation of ice, creating a dangerous condition that caused her accident.[3] This appeal followed.

On appeal, plaintiff argues that, in broadly applying common law snow removal immunity, the trial court misapplied the law and impermissibly acted as the factfinder by resolving factual issues, including causation. She renews her argument that the broken concrete curbing created a dangerous condition pursuant to N.J.S.A. 59:4-2, which the court did not address. Further, plaintiff contends the trial court erred in failing to apply or, in the alternative declining to extend, the Bligen[4] exception to common law snow removal immunity in this case.

We review a grant of summary judgment de novo, observing the same standard as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). Summary judgment should be granted only if the record demonstrates

---

[3] Although the March 31, 2017 order indicates summary judgment was granted based on defendants' "entitlement to common law snow removal immunity and or the [TCA,]" the court did not decide the motion on statutory grounds.

[4] Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993) (excepting a public housing authority from common law snow-removal immunity).

there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).

In performing this review, we must interpret the facts, and any inferences therefrom, in the light most favorable to the non-moving party.  See ibid.; Lippman v. Ethicon, Inc., 222 N.J. 362, 367 (2015) (citing Brill, 142 N.J. at 523, 540).  If there is a genuine issue as to any material fact, or credibility issues are presented, summary judgment should be denied.  See R. 4:46-2(c); Brill, 142 N.J. at 540.  If no genuine issue of material fact exists, the inquiry then turns to "whether the trial court correctly interpreted the law."  DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted).

We have recognized "two possible roads to snow-removal immunity[:] one is the [TCA] and the other is the common law."  Sykes v. Rutgers, State Univ. of New Jersey, 308 N.J. Super. 265, 267 (App. Div. 1998).  The common law doctrine of snow removal immunity was born of the recognition that complete "broom-swept" snow clearance is unrealistic, and even negligent snow removal is better than no snow removal.  Miehl v. Darpino, 53 N.J. 49, 54 (1968) (holding public entities are immune from liability for negligent snow removal).  Indeed, "By their very nature . . . snow-removal activities leave behind

'dangerous conditions.'" Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 413 (1988).

Further, common law snow removal immunity recognizes that municipalities face a difficult task of prioritization following a snowfall, and seeks to protect them from the "limitless liability" that could result if they "had to compensate every person injured from ice and snow on the State's hundreds of miles of streets and highways." Bligen, 131 N.J. at 131. Thus, "the common law consistently recognized immunity for injuries caused by the snow-removal activities of most public entities." Ibid. Shoveling, snow-blowing and salting fall "under the umbrella of snow removal activities." Lathers v. Twp. of W. Windsor, 308 N.J. Super. 301, 304-05 (App. Div. 1998) (citation omitted).

Immunity applies when snow or ice is the alleged cause of the accident. See Miehl, 53 N.J. at 53; see also Rochinsky, 110 N.J. at 415 n.7 (noting a cause of action could exist where a public entity's conduct was "unrelated to snow-removal activity" and amounted to "palpably unreasonable failure to warn of a dangerous condition"). However, Miehl, Rochinsky, and Lathers each considered claims against public entities solely based on negligent snow removal, independent of a dangerous condition in the pavement. Importantly, those cases did not address claims such as those advanced by plaintiff here that

the broken concrete curbing created a dangerous condition pursuant to N.J.S.A. 59:4-2, which provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

Viewing the facts, and the inferences therefrom, in the light most favorable to plaintiff, the court improperly resolved causation by discounting Dr. Nolte's unrefuted opinion that the property was in a dangerous condition. Through her expert, plaintiff set forth sufficient evidence to suggest the dangerous condition that caused her accident was not defendants' snow removal, in isolation. Rather, according to Dr. Nolte, the missing chunk of concrete,

9

which preexisted the snow event, caused ice to form. We therefore agree with plaintiff that, under the circumstances of this case, the trial court erred by finding common law snow removal immunity barred her claims, and failing to analyze the viability of those claims pursuant to N.J.S.A 59:4-2.

Because we determine that common law immunity does not bar plaintiff's claims, we decline to accept her invitation to extend Bligen to the facts presented here. See Sykes, 308 N.J. Super. at 269 ("In the absence of a clearly established landlord-tenant relationship, our courts have previously rejected attempts by slip and fall plaintiffs to classify a particular public entity as akin to a commercial landlord in order to squeeze within the Bligen rationale."). Instead, extension of the TCA's provision to abrogate municipal immunity for alleged snow and ice removal on school properties is a subject to be addressed and determined by the Legislature.

Accordingly, we vacate the order dismissing plaintiff's complaint on summary judgment only regarding common law snow removal immunity, and remand the case to the trial court to determine the viability of plaintiff's claims pursuant to N.J.S.A. 59:4-2. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009) (citation omitted) (Our review "does not consist of weighing evidence anew and making independent factual findings; rather, our

function is to determine whether there is adequate evidence to support the judgment rendered by the trial court."). We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11